**CLARENDON NATIONAL INSURANCE COMPANY, Petitioner,**

v.

**TIG REINSURANCE COMPANY, f/k/a Transamerica Reinsurance Company, and TIG Insurance Company, Respondents.**

No. 97 CIV. 5911(RWS).

United States District Court, S.D. New York.

Dec. 3, 1998.

Bingham Dana, NY, By Gary A. Adler, Diane C. Hertz, Of Counsel, Foley & Lardner, Milwaukee, WI, By Robert A. DuPuy, Of Counsel, for Petitioner.

Chadbourne & Parke, NY, By Peter R. Chaffetz, Steven C. Schwartz, Of Counsel, for Respondents.

## OPINION

SWEET, District Judge.

Petitioner Clarendon National Insurance Company ("Clarendon") has moved pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 6, 9, and 13, for an order confirming a partial arbitration award of May 6, 1998 (the "Partial Award"), and pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for relief from the judgment of this Court entered March 27, 1998 (the "Judgment"). Respondent TIG Reinsurance Company ("TIG") has cross-moved pursuant to the FAA, 9 U.S.C. §§ 6 and 10, for an order vacating the Partial Award. For the reasons set forth below, Clarendon's motion to confirm the Partial Award is granted, TIG's cross-motion is denied, and the Judgment will be modified as set forth below.

### The Issue

These deceptively simple motions raise novel and conceptually difficult issues surrounding the doctrine of *functus officio* and the use of Rule 60(b). The motions arise in the context of a complicated arbitration undertaken to resolve difficult and substantial issues arising out of a 1987 Portfolio Reinsurance Agreement ("Portfolio Agreement") between TIG and Clarendon under which obligations under some 300 reinsurance contracts were transferred from Clarendon to TIG.

The arbitrators have sought to perform the tasks of giving effect to the intentions of the parties, and their determinations, somewhat imperfectly executed, will be enforced. Com-

mon sense will dictate the application of the doctrines involved.

### Prior Proceedings

The prior proceedings in this action have been set forth in a prior opinion of this Court, familiarity with which is assumed. *See Clarendon National Insurance v. TIG Reinsurance Co.*, 990 F.Supp. 304 (1998). The prior proceedings relevant to the instant motion are set forth below.

This action was initiated on August 8, 1997, with respect to an arbitration which arose out of the purchase of some 300 reinsurance contracts. The parties commenced arbitration proceedings in 1992. The actual arbitration hearing began on January 29, 1997. Three separate issues had been dealt with by the arbitrators which were brought before the Court for review. By opinion of January 12, 1998, the award was confirmed as to Issue I and remanded as to Issue II and III. *See Clarendon*, 990 F.Supp. at 308–11.

As to Issue I, Clarendon had maintained that the arbitrators had made an error with respect to the amount of the payment upon termination of the Frontier treaty and sought a rehearing before the arbitrators which was denied. The Court in its enforcement of the award with respect to Issue I stated:

> Clarendon challenges the amount of damages awarded as to termination of the Frontier Agreement on the grounds that the amount of damages is based on a mistaken calculation submitted to the Panel by TIG. Going into the hearing both sides had believed that TIG's payment upon termination of the Frontier Treaty was $15,299,000. However, it was discovered that the payment was overstated by $363,000 and this correction was explained to the Panel. The Panel did not explicitly take the $363,000 correction into account in reaching its ruling, and there is no way to discern whether it included the correction or not.

*Clarendon*, 990 F.Supp. at 310.[1]

The Judgment was entered on March 27, 1998, as to Issue I, by which TIG was to recover from Clarendon $4,836,000 to which pre-judgment and post-judgment interest was to be added. On April 7, 1998, Clarendon satisfied the Judgment in the amount of $8,982,673.

On remand, the arbitrators accepted additional briefs and argument from the parties. Based on the scope of the remand, TIG discussed only Issues II and III. Clarendon revived its objections to the resolution of Issue I:

> Clarendon's payment was *not* reduced to reflect the $363,000 mistake that Mr. Franks admitted he made when he calculated the $4.836 million damage payment on this issue. Tr. 444–45. Clarendon has therefore paid to TIG Re a total of approximately $675,000 ($363,000 plus interest calculated under the MOU) that TIG Re knows it was not entitled to receive.

At the remand hearing, the arbitrators not only addressed Issues II and III, but also reopened Issue I. As to Issue I, the Panel stated:

> In addition to the above awards, with respect to point I of its Findings on Damages dated May 13, 1997, the Panel, on its own motion acknowledges an arithmetic error in the award which reduces the award by $346,000 to $4,498,000.

Robert Hall, the member of the three person panel appointed by TIG dissented. The Partial Award, which acknowledged the mathematical error, was entered on May 6, 1998.

Clarendon filed its motion on June 4, 1998, and TIG filed its cross-motion on August 3, 1998. Oral arguments were heard on September 23, 1998, at which time the instant motions were considered fully submitted.

### Discussion

### I. The Partial Award Correcting a Prior Mistake Will Be Enforced

The FAA provides that a court "must grant . . . an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9; *see Ottley v.*

---

1. Although the record indicated a $363,000 error and although TIG did not agree to the correction, the parties agreed that if the panel were to act, $346,000 belonged to Clarendon and the balance belonged to TIG.

*Schwartzberg,* 819 F.2d 373, 375 (2d Cir. 1987).

The grounds for vacating awards are narrow. Indeed, courts have consistently held that " 'arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.' " *Dirussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 821 (2d Cir.1997) (citation omitted). Moreover, the burden is on the party seeking to vacate the award to establish one of the statutory grounds for that relief. *See Willemijn Houdstermaatschappi, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir. 1997). Thus, the Second Circuit "adhere[s] firmly to the proposition[ ] . . . that an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a 'barely colorable justification for the outcome reached.' " *Landy Michaels Realty Corp. v. Local 32B–32J,* 954 F.2d 794, 797 (2d Cir.1992) (citation omitted).

Under Section 10 of the FAA, 9 U.S.C. § 10, there are four possible grounds for vacating an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone a hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudice.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made . . . .

9 U.S.C. § 10(a).

TIG contends that the arbitrators' action on an award issued and confirmed by this Court exceeded their jurisdiction within the meaning of 9 U.S.C. § 10(a)(4).

Since there is no dispute as to what the arbitrators did, the only question is their power to do it. This requires a review of the *functus officio* doctrine.

The Second Circuit has explained that, "as a general rule, once an arbitration panel decides the submitted issues, it becomes *functus officio* and lacks any further power to act." *Ottley,* 819 F.2d at 376 (citation and internal quotations omitted).

The doctrine has been extended to the situation where, as here, an award is final as to one issue, but not as to others. "Thus, if the parties have asked the arbitrators to make a final partial award as to a particular issue and the arbitrators have done so, the arbitrators have no further authority, absent agreement by the parties, to redetermine that issue." *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.,* 931 F.2d 191, 195 (2d Cir.1991).

The *functus officio* doctrine used to be strictly applied at common law. *See Teamsters Local 312 v. Matlack, Inc.,* 118 F.3d 985, 991 (3d Cir.1997):

> The policy underlying the common law doctrine derives from a perception that arbitrators, unlike judges, are not institutionally sheltered from "the potential evil of outside communication" and are thus particularly susceptible to various ex parte influences that might affect a conclusion. As the Seventh Circuit stated in *Excelsior Foundry,*[2] *functus officio* conceives of arbitrators as "ad hoc judges—judges for a case; and when the case is over, they cease to be judges and go back to being law professors or businessmen or whatever else they are in private life." In the same opinion, the court opined that the *functus officio* doctrine was motivated primarily by judicial antagonism toward arbitrators and a derogation of the arbitral process—originating "in the bad old days when judges were hostile to arbitration and ingenious and hamstringing it."

*Id.* at 991 (citations omitted and footnote added). After recognizing the history of the

---

**2.** The court is citing to *Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union v. Excels-* *ior Foundry Co.,* 56 F.3d 844, 846–47 (7th Cir. 1995).

doctrine, the court acknowledged that the doctrine remains viable, but listed certain recognized exceptions:

(1) an arbitrator can correct a mistake which is apparent on the face of his award; (2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination; and (3) where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.

*Id.* at 991–92 (citations and internal quotations omitted). Further, the court noted that exception (1), for mistake, is designed to allow an arbitrator to correct clerical errors or obvious mathematical miscalculations. *See id.*

In this case, the exemption to the *functus officio.* doctrine must be stretched beyond the mistake category, since although there was an obvious mathematical error that they intended to take into account but failed to do so in their original award, as the procedural history demonstrates, the error was not obvious on the face of the award.

Clarendon submits that an exception to the *functus officio* doctrine is applicable here and that the instant case is analogous to *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, Local 631 v. Silver State Disposal Service, Inc.,* 109 F.3d 1409 (9th Cir.1997), where the court held that the *functus officio* doctrine did not prevent the modification of a prior, final arbitration award on the ground that the initial award was incomplete. In that case, the award failed to provide for back pay to the terminated employee. In confirming an amended award, the court recognized that under common law, an arbitrator can " 'correct a mistake which is apparent on the face of his award, complete an arbitration if the award is not complete, and clarify an ambiguity in the award.' " *Id.* at 1411 (quoting *McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d at 731, 734, n. 1 (9th Cir.1982)).

As TIG points out, however, it cannot be said that the arbitrators at issue completed an incomplete award. Clarendon counters that the arbitrators merely corrected a mistake in their original calculation of damages and, therefore, pursuant to the "mistake" exception, the *functus officio* doctrine does not apply. *Cf. Paperhandlers Union No. 1, International Printing, Pressmen & Assistants Union, AFL–CIO v. U.S. Trucking Corp.,* 441 F.Supp. 469, 476 (S.D.N.Y.1977) (holding that the arbitrators were *"functus officio* except for the purpose of (correcting) a deficiency of form or a miscalculation of figures or to eliminate matter not submitted." (citation and internal quotations omitted)). The arbitrators apparently only became fully aware of their mistake when they received the order remanding Issues II and III for clarification.

In *American Centennial Ins. Co. v. Arion Ins. Co.,* No. 88 Civ. 1665, 1990 WL 52295 (S.D.N.Y. Apr. 18, 1990), the arbitrators issued an award that certain contracts were valid through September 30, 1992, and void thereafter. Subsequently, the arbitrators modified the award, struck the implementing paragraphs and made clarifying statements on the record related to a provision which was not submitted to arbitration. The parties agreed to vacate the modified award. This Court found, however, that the original October 6, 1989, award and the clarifying statements were consistent and, therefore, this Court confirmed the original October 6, 1989, award, but ruled that it was to be applied as consistent with the arbitrator's clarifying remarks. Thus, because the clarification did not modify the effect of the award but only interpreted the arbitrators' intent, the *functus officio* doctrine did not bar the arbitrators' clarification of the original award after its issuance. *See id.* at *6.

■ Here, the issue of the damages Clarendon owed to TIG was squarely before the arbitrators, but they simply made a mathematical error they now seek to correct. The spirit and basic effect of the award was not modified. Consequently, the Partial Award will be enforced.

In cases like this one, the *functus officio* doctrine may simply have outlived its usefulness. As the Seventh Circuit said:

> [t]he doctrine originated in the bad old days when judges were hostile to arbitration and ingenious in hamstringing it. . . .
>
> . . .
>
> The doctrine is based on the analogy of a judge who resigns his office and, having done so, naturally cannot rule on a request to reconsider or amend his decision. . . . The flaw in the analogy is that the judge's resignation does not deprive litigants of an opportunity to seek reconsideration of his decisions. Motions to reconsider are simply directed to another judge. If the "resignation" of the arbitrator from the case, in accordance with the doctrine of *functus officio*, disables him from considering a motion for reconsideration, clarification, amendment, or other modification, there is nobody to whom the parties can turn. The result would be a gap in the system of arbitral justice that would make very little sense that we can see. . . .

*Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL–CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 846–47 (7th Cir.1995) (citations omitted). The court then discussed the exceptions for completion and clarification. *See id.* at 847. With respect to the exceptions, the court stated:

> [s]ince the case for the exceptions seems stronger than the case for the rule, perhaps the time has come to discard the rule. It is judge-made; it can be judge-unmade.

*Id.* at 848. This logic is particularly applicable in a case like this one where the arbitrators made and acknowledged a mistake.

Arbitrators should simply be permitted to correct errors—but only errors—upon remand even if the particular issue was not remanded. This holding in no way gives arbitrators *carte blanche* to alter any decision previously rendered. Given the unusual circumstance—namely, that the arbitrators acknowledged a mathematical error, one that neither party disputes—equitable factors in this case weigh in favor of Clarendon, and the motion to confirm will be granted.

## II. The Judgment Will Be Modified Pursuant to Rule 60(b)(6)

Having determined that the Partial Award should be confirmed since the circumstances at bar justify its exemption from the *functus officio* doctrine, modification of the Judgment entered on March 27, 1998, is warranted. Rule 60(b)(6) of the Federal Rules of Civil Procedure provides the means to accomplish the task.

█ As an initial matter, it bears noting that, contrary to TIG's contention, Clarendon does not suggest the use of Rule 60(b) to modify the arbitration award itself. It is well-established that Rule 60(b) does not apply to such awards. *See Cook Chocolate Co. v. Salomon, Inc.*, 748 F.Supp. 122, 125 (S.D.N.Y.1990) (holding that Rule 60(b) cannot be utilized to vacate an arbitration award), *aff'd*, 932 F.2d 955 (2d Cir.1991). Rather, Clarendon invokes the Rule to modify the Judgment entered by this Court.

Section 13 of the FAA, 9 U.S.C. § 13, provides that a judgment confirming an award, once entered, has the same force and effect as a judgment in a standard civil action and is "subject to all provisions of law" relating to judgments. That includes the provisions of Fed.R.Civ.P. 60(b). Rule 60(b) provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made in a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).

█ Motions pursuant to Rule 60(b) are addressed to the sound discretion of the District Court. *See Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990), *aff'd*, 501 U.S. 115, 111

S.Ct. 2173, 115 L.Ed.2d 109 (1991). In considering the relief under Rule 60(b), Clarendon's need for substantial justice must be weighed against the need for preserving the finality of judgments. *See Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986) ("Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments."); *see also House v. Secretary*, 688 F.2d 7, 9 (2d Cir.1982).

■ Although Clarendon has advanced sections (1), (2), and (6) of the Rule as alternative grounds for modifying the Judgment, only section (6) is applicable. Relief under Rule 60(b)(6) is available if the movant acts in a timely fashion, which translates to a "reasonable time." *See P.T. Busana Idaman Nurani v. Marissa by GHR Indus. Trading Corp.*, 151 F.R.D. 32, 34 (S.D.N.Y. 1993); *see Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n. 11, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *U.S. v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977). "What constitutes reasonable time for the purposes of Rule 60(b)(6) will necessarily vary with the particular circumstances of a case." *P.T.*, 151 F.R.D. at 35. Assessing whether a movant has satisfied the "reasonable-time" limitations requires "scrutin[izing] the particular circumstances of the case, and balanc[ing] the interests in finality with the reason for delay." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir.1983); *Cirami*, 563 F.2d at 35; *Socialist Republic of Romania v. Wildenstein*, 147 F.R.D. 62, 65 (S.D.N.Y. 1993).

■ Clarendon has moved for relief within a reasonable time. The Judgment was entered on March 27, 1998. The Partial Award, acknowledging the arbitrators' mathematical error, was entered on May 6, 1998. Clarendon's motion was filed approximately one month later. Thus the timing is reasonable and in compliance with the limitations provision of Rule 60(b).

Rule 60(b)(6) has been described as a "'grand reservoir of equitable power to do justice in a particular case'" and is to be "'liberally applied'" where appropriate. *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir.1994) (quoting *Moore's Federal Practice* ¶ 60.27[2], at 295,

273 (2d ed.1993)); *see Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 543 (2d Cir.1963) (explaining that "the rule should be liberally construed when substantial justice will thus be served"). Rule 60(b)(6) is "'properly invoked where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship.'" *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir.1994) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir.1986) (citations omitted)); *see Quevedo v. Postmaster, United States Postal Serv.*, 774 F.Supp. 837, 839 (S.D.N.Y.1991).

■ Extraordinary circumstances exist in this case. None of the parties could have anticipated that upon the remand of Issues II and III, the arbitrators would reopen Issue I and correct the error about which Clarendon had complained previously. Neither the parties nor the Court could know from the Damages Award that the panel actually meant for the principal amount to be $4,498,000. Adding to the uniqueness of the situation, TIG knew it had presented a mistaken figure to the arbitrators. As a result, the parties logically assumed that the arbitrators would take that mistake into account in entering any award. However, the arbitrators mistakenly failed to do so. Indeed, the arbitrators now confirm that at that time, they intended to reduce the award by the mistaken amount. This post-confirmation acknowledgment of a substantial mathematical error constitutes a sufficiently extraordinary circumstance to justify relief from the Judgment.

Under the circumstances, substantial justice will only be served by granting the relief Clarendon requests. Accordingly, the Judgment will be modified to take into account the excess amount paid by Clarendon to TIG. An Amended Judgment will be entered in favor of Clarendon in the principal amount of $346,000, plus the proportionate amount of interest Clarendon paid on that $346,000 when it satisfied the Judgment, or $296,-680.91, together with post-satisfaction interest beginning from April 7, 1998.

*Conclusion*

For the reasons set forth above, Claren-don's motion to confirm the Partial Award and modify the Judgment is granted, and TIG's cross-motion to vacate the Partial Award is denied.

Settle judgment on notice.

It is so ordered.