Dawn M. SANDS,
Plaintiff-Appellant-Cross-Respondent,

v.

MENARD, INC.,
Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 2012AP286. Submitted on briefs February 26, 2013.
—Decided March 26, 2013.*

2013 WI App 47

(Also reported in 831 N.W.2d 805.)

446

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *John P. Richie* of *Richie, Wickstrom and Wachs, LLP*, Eau Claire; and *Charles K. Maier, Daniel R. Shulman, Julie L. Boehmke* and *Jeremy L. Johnson* of *Gray, Plant, Mooty, Mooty & Bennett, P.A.*, Minneapolis, MN.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Michael J. Modl* of *Axley Brynelson, LLP*, Madison; *Stephanie L. Finn* of *Herrick & Hart, S.C.*; and *Michael D. Freeborn, Brian P. Norton* and *Michael P. Kornak* of *Freeborn & Peters LLP*, Chicago, IL.

Before Hoover, P.J., Mangerson, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. This case is before us for the second time. In a previous appeal, we affirmed a circuit court judgment confirming an arbitration award that ordered Menard, Inc., to reinstate its former employee, Dawn Sands, to her previous position with the company after an unlawful termination. The supreme court reversed our decision, concluding that reinstatement was an inappropriate remedy under the circumstances. The court remanded the case to the circuit court with directions to determine an appropriate front pay award, in lieu of reinstatement. On remand, the circuit court refused to take any additional evidence on the issue of front pay. In addition, the court summarily denied Menard's two WIS. STAT. § 806.07(1)(h)[1] motions, which sought relief from the judgment confirming the arbitration award. Based on the record before the arbitration panel, the court awarded Sands $603,333 in front pay. It also awarded her $576,469 in attorney fees. Sands appeals, and Menard cross-appeals.

¶ 2. We conclude the circuit court properly denied Menard's first WIS. STAT. § 806.07(1)(h) motion, but it erred by refusing to consider Menard's second § 806.07(1)(h) motion. At a minimum, the court should have determined whether Menard's second motion was brought within a reasonable time, and whether the allegations in the motion, if true, would have entitled Menard to relief. If so, the court should have held a hearing to determine the truth or falsity of Menard's allegations. Accordingly, we reverse the judgment awarding Sands front pay and attorney fees, and we remand for the circuit court to consider the merits of Menard's second § 806.07(1)(h) motion.

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

¶ 3. Because we reverse and remand for consideration of Menard's second Wis. Stat. § 806.07(1)(h) motion, it is arguably unnecessary for us to address the parties' remaining arguments. However, because the parties raise issues that will arise on remand if the circuit court denies Menard's § 806.07(1) motion, we choose to address them in the interest of judicial efficiency. Specifically, both parties argue the circuit court erred by failing to hold an evidentiary hearing on the issue of front pay. In the event the circuit court grants Menard relief under § 806.07(1)(h), this issue will be moot. But, if the court denies Menard's second § 806.07(1)(h) motion, we agree with the parties that the court should hold an evidentiary hearing on the amount of front pay to which Sands is entitled. At that hearing, both Sands and Menard may present any evidence relevant to determining an appropriate front pay award.

¶ 4. In addition, Menard challenges the circuit court's attorney fee award. We reject Menard's argument that Sands is not entitled to attorney fees because she was not a "prevailing party" in Menard's appeal to the supreme court. Nevertheless, we agree with Menard that the circuit court used an improper method to calculate the amount of attorney fees Sands could recover. The court's attorney fee award therefore constitutes an erroneous exercise of discretion.

## BACKGROUND[2]

¶ 5. Menard hired Sands as its "executive general counsel" in 1999. Sands worked in Menard's in-house legal department until March 2006, when Menard ter-

---

[2] Menard's cross-appeal brief, which is less than two hundred words shy of the word limit, does not contain a statement of the case. Instead, Menard incorporates by reference the thirty-page statement of the case from its response brief in Sands' appeal. Similarly, Sands' reply brief, which is less than one hundred

minated her employment. After her termination, Sands maintained that Menard had paid her less than comparable male employees, in violation of the Equal Pay Act,[3] and had retaliated against her for asserting her right to equal pay, contrary to the Equal Pay Act, Title VII of the Civil Rights Act of 1964,[4] and the Wisconsin Fair Employment Act.[5] Settlement discussions failed, and the parties agreed to submit Sands' claims to binding arbitration.

¶ 6. On October 19, 2007, the arbitration panel found in favor of Sands. It awarded her $267,108 in back pay, and an equal amount of liquidated damages.[6] Sands was also awarded $100,000 in compensatory damages for emotional distress, $900,000 in punitive damages, and $129,120.25 in attorney fees.

¶ 7. In addition, the panel ordered Menard to reinstate Sands to her former position within thirty days. Sands had asked the panel to award two years' front pay, rather than reinstatement. In fact, in a brief to the panel, she stated that "no reasonable person would

words shy of the word limit, incorporates by reference arguments from her response brief in Menard's appeal.

We find disturbing the parties' attempts to circumvent the word limits set forth in Wis. Stat. Rule 809.19(8)(c). Violations of the rules of appellate procedure can result in a variety of sanctions, some quite serious. Additionally, we note that the parties' briefs are often unnecessarily repetitious and could, in many instances, have been shortened. We remind the parties that the word limits in Rule 809.19(8)(c) are limits, not goals.

[3] *See* 29 U.S.C. § 206(d).

[4] *See* 42 U.S.C. § 2000e-3(a).

[5] *See* Wis. Stat. § 111.36.

[6] Sands requested a greater amount of back pay. The panel, however, concluded Sands was not entitled to any back pay after October 31, 2006, the date she failed to accept an offer of employment "at a wage level which exceeded her time-of-discharge salary with Menard[.]"

entertain reinstatement as a possibility" under the circumstances. The panel conceded that the hostility between Sands and Menard weighed against reinstatement, and it acknowledged that "[w]hether to award reinstatement or front pay to Sands is a difficult decision." Nonetheless, the panel ultimately determined reinstatement was appropriate, on the ground that reinstatement "is the favored remedy under the law." The panel also noted that failure to reinstate Sands would "in some sense, reward the company for its mistreatment of her and . . . send the wrong message to company employees who otherwise might be inclined to make meritorious complaints about unlawful conduct occurring within the company."

¶ 8. Menard paid Sands the damages and attorney fees awarded by the arbitration panel. It refused, however, to reinstate her. Sands subsequently moved the circuit court to confirm the arbitration award. Menard, in turn, moved to vacate the award. In addition to challenging the award as a whole, Menard specifically attacked the reinstatement provision. The circuit court confirmed the award.

¶ 9. Menard then appealed, challenging only the panel's decision to award reinstatement. This court affirmed, concluding the panel's reinstatement order rested on substantial authority and the panel did not manifestly disregard the law. *See Sands v. Menard, Inc.*, 2009 WI App 70, ¶¶ 10–11, 318 Wis. 2d 206, 767 N.W.2d 332.

¶ 10. Our supreme court subsequently reversed, holding that the arbitrators exceeded their authority by ordering reinstatement. *See Sands v. Menard, Inc.*, 2010 WI 96, ¶ 2, 328 Wis. 2d 647, 787 N.W.2d 384. The court reasoned that, "by accepting reinstatement, Sands would be forced to violate her ethical obligations as an

attorney." *Id* . Consequently, the order reinstating her was "void as a violation of strong public policy." *Id.* The court therefore vacated the reinstatement award, as Menard had requested. *Id.* However, the court also accepted Sands' argument that, if the court found reinstatement improper, it should "remand for an award of front pay to effectuate the panel's clear intention to make the successful plaintiff whole." *Id.*, ¶¶ 67–68. The court explained:

> The panel made clear that it was going to award either front pay or reinstatement ("Whether to award reinstatement or front pay to Sands is a difficult decision."). In order to make Sands whole in accord with the intentions of the arbitration panel, we vacate the award of reinstatement and remand to the circuit court for a determination on the equities of an appropriate front pay award.

*Id.*, ¶ 69.

¶ 11. On remand, Menard submitted a "position statement" to the circuit court. Menard alleged it had recently discovered evidence that Sands engaged in misconduct during her tenure at Menard, and had Menard known about the misconduct, it would have fired her. Specifically, Menard asserted Sands violated the company's internal policies by "secretly negotiating a deal with a third-party company, Sourcing Solutions, LLC, to help it sell hundreds of millions in product to Menard[.]" As part of that deal, Sands and her sister, Debra, would have received fifty percent of the gross margin of Sourcing Solutions' sales to Menard.[7] Menard also asserted that Sands violated her duties as an

---

[7] Debra, who is also an attorney, performed some work for Menard as outside counsel. In addition, Debra was engaged to Menard's president, John Menard.

attorney by failing to reveal certain misconduct Debra allegedly committed while negotiating a deal between Menard and MH Equity Managing Member, LLP. Finally, Menard alleged Sands failed to inform it that her law license was temporarily suspended in 2001 for failure to pay her annual dues.

¶ 12. Menard contended that, "had Menard management been aware of this misconduct . . . Menard would have discharged Sands." Menard therefore argued its "after-acquired evidence" of misconduct should bar Sands from receiving any front pay. In addition, Menard argued Sands was barred from receiving front pay because she had failed to mitigate her damages. Menard asked the court to schedule an evidentiary hearing on these issues.

¶ 13. Sands opposed Menard's attempts to introduce after-acquired evidence of misconduct and evidence that she failed to mitigate her damages. However, she too asked the court to hold an evidentiary hearing on the issue of front pay. Sands sought to introduce evidence that: (1) she had intended to work for Menard until age seventy-two, and she would have done so but for her unlawful termination; (2) it is common for management-level employees to remain employed at Menard for long periods of time; and (3) Menard's actions, including its refusal to reinstate Sands, irreparably harmed her career and prevented her from obtaining other employment. Based on this evidence, Sands argued she was entitled to front pay until she reached age seventy-two. In response, Menard noted that Sands had requested only two years' front pay during arbitration, and it therefore argued she was estopped from asking the circuit court to award a greater amount.

¶ 14. The circuit court refused to hold an evidentiary hearing. It reasoned:

> [T]his remains the review of an arbitration award. This remains now I see it as a very narrow review of that award, and that is the Supreme Court has determined that the appropriate remedy was front pay to make the plaintiff in that case whole. The matter was—this Court doesn't take additional evidence except when necessary. It's not necessary in this case. The appropriate amount of evidence was provided to the arbitrators. There's a complete record with regard to that.

The court awarded Sands two years of front pay, calculated from November 1, 2006—the day after her back pay award ended. By limiting front pay to two years, the court stated it was giving Sands "exactly what she had asked for" in arbitration.[8] The court also stated that, under the circumstances, "a two-year period of time is a reasonable period of time within which to find comparable employment." The court ultimately increased the front pay award to two years and 352 days, which resulted in a total award of $603,333.[9]

¶ 15. While the parties' submissions regarding front pay were pending, Menard filed a separate motion, pursuant to Wis. Stat. § 806.07(1)(h), seeking relief from the judgment confirming the arbitration award. Again, Menard cited its after-acquired evidence that Sands had committed misconduct in connection with the Sourcing Solutions deal, the MH Equity Man-

---

[8] In fact, during arbitration, Sands had suggested that two years of front pay would be a "significant severance package."

[9] The court reasoned that, by remanding for an award of front pay, the supreme court had "substituted its judgment for that of the arbiter" regarding Sands' failure to mitigate damages. The court therefore determined the supreme court's mandate required Sands to be compensated for an additional 352 days, representing "the period of time from the arbiter's determination of the end of back pay through the time reinstatement is ordered."

459

aging Member deal, and the 2001 suspension of her law license. Because Menard allegedly would have terminated Sands for this conduct, Menard argued Sands was not entitled to any back pay. Menard therefore sought disgorgement of the arbitrators' back pay award. The circuit court summarily denied Menard's motion, stating that the issues raised by the motion "went beyond the specific task before the court" on remand.

¶ 16. After the court rendered its front pay award, Sands petitioned for $671,062.38 in attorney fees and costs. According to Sands, this figure represented her attorney fees and costs since October 19, 2007—the date of the arbitrators' decision. Menard opposed Sands' fee petition on two grounds. First, Menard argued Sands could not recover the requested fees because she was not the "prevailing party" in Menard's appeal to the supreme court. Second, Menard contended Sands' fee petition was insufficient because it did not establish that the requested fees were reasonable or necessary.

¶ 17. Addressing Menard's first argument, the circuit court concluded that both parties prevailed on appeal to the supreme court. The supreme court vacated the reinstatement award, as Menard requested, but it also remanded for an award of front pay, as Sands requested. The circuit court therefore determined Sands was entitled to attorney fees, and the only remaining issue was the proper amount.

¶ 18. With respect to the amount of attorney fees, the court stated that Sands' fee request for $671,062.38 "border[ed] on the obscene" and "instantaneously shocked the conscience[.]" The court also ruled that Sands "provided insufficient information with regard to what a reasonable hourly rate is and what a reasonable amount expended would be." However, instead of denying Sands' fee petition, the court determined that

460

Sands' attorney fee award should be limited to the amount Menard spent on attorney fees. The court therefore ordered Menard to submit an affidavit outlining its attorney fees since the date of the arbitration award. If Menard failed to do so, the court would assume that Menard had spent more than Sands, and it would therefore deem her request reasonable.

¶ 19. Menard subsequently submitted affidavits showing that it incurred $576,469 in legal fees during the relevant period. Consequently, the circuit court awarded Sands $576,469 in attorney fees. On December 20, 2011, the court entered a final judgment incorporating all "oral and written orders and decisions of this Court since this matter was remanded from the Wisconsin Supreme Court . . . ."

¶ 20. Menard then moved for relief from the court's December 20, 2011 judgment and from the judgment confirming the arbitration award, pursuant to Wis. Stat. § 806.07(1)(h). Menard's motion repeated the same grounds alleged in its previous § 806.07(1)(h) motion. But, Menard also alleged it had recently discovered evidence suggesting that Sands paid Debra to provide false testimony during the arbitration proceedings. Menard requested an evidentiary hearing on these allegations, but the court summarily denied its motion. Shortly thereafter, both Sands and Menard filed notices of appeal.

## DISCUSSION

¶ 21. On appeal, Sands argues the circuit court should have held a de novo hearing on the issue of front pay. Menard agrees that the court should have held an evidentiary hearing on front pay, but it contends that Sands should not be permitted to present evidence that

she could have, but failed, to present at the arbitration hearing. In addition, Menard argues that the court erred by summarily denying Menard's WIS. STAT. § 806.07(1)(h) motions and by awarding Sands attorney fees.

¶ 22. We first address Menard's argument that the court erred by summarily denying its WIS. STAT. § 806.07(1)(h) motions. Because we conclude that the circuit court should have considered the merits of Menard's second motion, we reverse the judgment awarding Sands front pay and attorney fees and remand for further proceedings. We also address the parties' remaining arguments regarding front pay and attorney fees in the interest of judicial efficiency.

## I. Menard's WIS. STAT. § 806.07(1)(h) motions

¶ 23. WISCONSIN STAT. § 806.07(1) provides that a court may relieve a party from a judgment or order for eight reasons, listed in paragraphs (a) through (h). Paragraphs (a) through (g) describe specific circumstances in which the court may grant relief, but paragraph (h) is a "catch-all" provision allowing relief from judgment for "[a]ny other reasons justifying relief." *See* WIS. STAT. § 806.07(1)(h); *Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶ 32, 326 Wis. 2d 640, 785 N.W.2d 493 (quoting another source). "A court appropriately grants relief . . . under [§ 806.07(1)(h)] when extraordinary circumstances are present justifying relief in the interest of justice." *Miller*, 326 Wis. 2d 640, ¶ 35.

¶ 24. Menard twice moved for relief from the judgment[10] confirming the arbitration award, pursuant

---

[10] The circuit court actually entered an *order* confirming the arbitration award, rather than a judgment. The parties, however, treated the order as a judgment—Menard filed a "Notice of Motion and Motion for Relief from Judgment," and

to Wis. Stat. § 806.07(1)(h).[11] Menard's first motion sought disgorgement of the arbitrators' back pay award, based on after-acquired evidence that Sands committed misconduct. Menard's second motion repeated the after-acquired evidence grounds, but it also alleged that Sands paid Debra to testify falsely during the arbitration proceedings. Menard argued this latter evidence called the entire arbitration award into question. The circuit court summarily denied both motions.

██

¶ 25. An order denying relief under Wis. Stat. § 806.07(1) will not be reversed on appeal absent an erroneous exercise of discretion. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985). A court erroneously exercises its discretion by making an error of law. *Bethke v. Auto-Owners Ins. Co.*, 2013 WI

---

Sands filed a "Notice of Entry of Judgment." On appeal, neither party suggests that the document in question should be treated differently simply because it was labeled an order instead of a judgment. Additionally, we note that Wis. Stat. § 806.07(1) allows a party to seek relief from orders, as well as judgments. For clarity and consistency, we refer to the document confirming the arbitration award as a judgment throughout this opinion.

[11] Menard's motions also sought relief under Wis. Stat. § 806.07(1)(b) (newly-discovered evidence) and § 806.07(1)(c) (fraud, misrepresentation, or other misconduct of an adverse party). However, motions under paragraphs (b) and (c) must be brought within one year after the judgment was entered. *See* Wis. Stat. §§ 806.07(2), 805.16(4). It is undisputed that Menard did not comply with this time limit. Thus, to the extent Menard sought relief under paragraphs (b) and (c), its motions were untimely and were properly denied. Nevertheless, even if a movant's claim sounds in paragraphs (b) or (c), the movant may still obtain relief under paragraph (h) if extraordinary circumstances justify relief. *See State ex rel. M.L.B v. D.G.H.*, 122 Wis. 2d 536, 549–50, 363 N.W.2d 419 (1985).

16, ¶ 16, 345 Wis. 2d 533, 825 N.W.2d 482. Here, the circuit court concluded Menard's Wɪꜱ. Sᴛᴀᴛ. § 806.07(1) motions went beyond the scope of the supreme court's mandate. The interpretation of a supreme court mandate is a question of law subject to independent review. *Tietsworth v. Harley-Davidson, Inc.*, 2007 WI 97, ¶ 22, 303 Wis. 2d 94, 735 N.W.2d 418.

■

¶ 26. The supreme court directed the circuit court to "determine an appropriate award of front pay." *Sands*, 328 Wis. 2d 647, ¶ 70. Nothing in this mandate prevented the circuit court from considering a motion for relief from the judgment confirming the arbitration award. If Menard could have used Wɪꜱ. Sᴛᴀᴛ. § 806.07(1) to reopen the judgment in the absence of the supreme court's mandate, we see no reason why the court's mandate should have prevented Menard from doing so.

¶ 27. Accordingly, the question becomes whether Wɪꜱ. Sᴛᴀᴛ. § 806.07(1) can be used to reopen a judgment confirming an arbitration award. This is an open question in Wisconsin. *See Franke v. Franke*, 2004 WI 8, ¶ 27, 268 Wis. 2d 360, 674 N.W.2d 832 (declining to address whether, as a general rule, § 806.07 can be used to reopen judgments confirming arbitration awards). However, as Menard points out, federal courts have held that Federal Rule of Civil Procedure 60(b), the analogue to § 806.07, can be used to reopen judgments confirming arbitration awards. *See AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 579 F.3d 1268, 1272–74 (11th Cir. 2009) (affirming district court decision to grant relief from a judgment confirming an arbitration award, pursuant to Rule 60(b)); *Baltia Air Lines, Inc. v. Transaction Mgm't, Inc.*, 98 F.3d 640, 642 (D.C. Cir. 1996) (concluding that Rule 60(b) is "an appropriate vehicle by which to challenge a judgment

confirming an arbitration award"); *Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co.*, 183 F.R.D. 112, 117–18 (S.D.N.Y. 1998) (same). "[W]here a state rule mirrors [a] federal rule, we consider federal cases interpreting the rule to be persuasive authority." *State v. Evans*, 2000 WI App 178, ¶ 8 n.2, 238 Wis. 2d 411, 617 N.W.2d 220.

¶ 28. In addition, Menard notes that under Wis. Stat. § 788.14(3), a judgment confirming an arbitration award shall "have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action." Menard therefore argues a judgment confirming an arbitration award should be subject to Wis. Stat. § 806.07(1), just like any other judgment. Sands does not respond to Menard's argument that judgments confirming arbitration awards can be reopened pursuant to § 806.07(1). Therefore, we agree with Menard that § 806.07(1) can be used to reopen judgments confirming arbitration awards. Consequently, the circuit court should have at least considered the merits of Menard's motions, instead of summarily denying them.

¶ 29. Dismissal of Menard's first motion was nevertheless proper, though, because Menard could not prevail on that motion as a matter of law. Menard's first motion sought disgorgement of Sands' back pay award, based on after-acquired evidence that Sands committed misconduct while employed by Menard. In employment discrimination cases, after-acquired evidence refers to "evidence of wrongdoing that would have led to [the employee's] termination on legitimate grounds had the employer known about it." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362 (1995). After-acquired evidence of misconduct does not preclude an

465

employer from being held liable for discrimination, but it limits the employee's remedy. *See id.* at 361–62. Specifically, if the employer prevails on its after-acquired evidence defense, the employee's back pay is limited to the period "from the date of the unlawful discharge to the date the new information was discovered." *Id.* at 362.

██

¶ 30. Menard alleges it discovered Sands' misconduct in November or December of 2010. Sands' back pay award ended on October 31, 2006, the date the arbitrators determined that Sands refused to accept an offer of comparable employment. Thus, Sands' back pay award ended long before Menard discovered Sands' alleged misconduct. As a result, Menard was not entitled to disgorgement as a matter of law. *See id.* Denial of Menard's first Wis. Stat. § 806.07(1)(h) motion was therefore proper on the merits.

██

¶ 31. Conversely, the circuit court improperly denied Menard's second Wis. Stat. § 806.07(1)(h) motion. In that motion, Menard alleged that Sands paid Debra to testify falsely during the arbitration proceedings.[12] This allegation does not relate to Menard's after-acquired evidence defense. Instead, Menard's allegation that Sands purchased her sister's testimony goes to the integrity of the arbitration proceedings themselves. The circuit court should therefore have considered the merits of Menard's second § 806.07(1)(h) motion, instead of summarily denying it.

---

[12] Menard's second Wis. Stat. § 806.07(1)(h) motion also repeated Menard's after-acquired evidence arguments. To the extent the motion was based on after-acquired evidence, the circuit court properly denied it, as discussed above. *See supra* ¶¶ 29–30.

¶ 32. If Menard was entitled to relief from the judgment confirming the arbitration award, then any award of front pay or attorney fees would have been improper. As a result, we reverse the judgment awarding Sands front pay and attorney fees, and we remand to the circuit court with directions to consider the merits of Menard's second WIS. STAT. § 806.07(1)(h) motion. At a minimum, the court should determine whether the motion was brought within a reasonable time, *see* WIS. STAT. § 806.07(2),[13] and whether the motion alleged facts that, if true, would constitute extraordinary circumstances entitling Menard to relief, *see M.L.B.*, 122 Wis. 2d at 557. If so, the court should hold a hearing "on the truth or falsity of the allegations." *See id.* If the court determines the allegations are true, it should consider "any other factors bearing upon the equities of the case" and "decide what relief if any should be granted[.]"[14] *See id.*

---

[13] *See also State ex rel. Cynthia M.S. v. Michael F.C.*, 181 Wis. 2d 618, 627, 511 N.W.2d 868 (1994) (discussing factors relevant to the reasonableness inquiry).

[14] Menard urges us to "remand this matter and instruct the trial court to grant Menard['s] [WIS. STAT.] § 806.07(1) motions." Whether to grant relief under § 806.07(1) lies within the circuit court's discretion. *M.L.B.*, 122 Wis. 2d at 541. We decline Menard's invitation to usurp the circuit court's role and exercise discretion on its behalf.

In addition, both Menard and Sands expend considerable portions of their appellate briefs attempting to convince us that certain factual assertions are either true or false. It is dismaying, to say the least, that the parties' briefs generally read like trial briefs to the circuit court. We remind the parties that this court is a court of review and may not make factual findings. *See Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980) (court of appeals is "by the Constitution limited to appellate jurisdiction" and may not "mak[e] any factual determinations where the evidence is in dispute").

## II. Front pay

¶ 33. We next address the parties' arguments on the issue of front pay. As indicated, if the circuit court denies Menard's Wɪs. Sᴛᴀᴛ. § 806.07(1)(h) motion on remand, the appropriateness of the court's front pay award will again be at issue. We therefore choose to address the parties' front pay arguments in the interest of judicial efficiency.

¶ 34. Both Sands and Menard contend the circuit court erred by refusing to hold an evidentiary hearing on the issue of front pay. The circuit court concluded that taking new evidence would conflict with its mandate from the supreme court. The interpretation of a supreme court mandate presents a question of law. *Tietsworth*, 303 Wis. 2d 94, ¶ 22.

¶ 35. The supreme court vacated Sands' reinstatement award and "remand[ed] to the circuit court to determine an appropriate award of front pay." *Sands*, 328 Wis. 2d 647, ¶ 70. Elsewhere, the court stated it was remanding to the circuit court for "a determination on the equities of an appropriate front pay award." *Id.*, ¶ 69. The court also explained that the aim of its holding was "to make Sands whole in accord with the intentions of the arbitration panel," given that the panel "made clear that it was going to award either front pay or reinstatement[.]" *Id.*

¶ 36. Under the circuit court's interpretation, this mandate froze the evidentiary record as it existed at the time the arbitrators rendered their decision. We disagree. Nothing in the supreme court's mandate prevented the circuit court from taking evidence on the issue of front pay. In fact, the supreme court expressly instructed the circuit court to determine the "equities"

of an appropriate front pay award. *Id.* "[F]ront pay is an equitable remedy." *Id.*, ¶ 68. As with other equitable remedies, a court must consider *all of the facts* when fashioning an appropriate front pay award. *See, e.g., Tennes v. Massachusetts Dep't of Revenue*, 944 F.2d 372, 381 (7th Cir. 1991) (award of front pay "lie[s] within the discretion of the trial court after careful consideration of the particular facts of the case"); *Prince v. Bryant*, 87 Wis. 2d 662, 673, 275 N.W.2d 676 (1979) (explaining that a different equitable remedy could only be imposed after "an evidentiary hearing and a careful and equitable consideration of all relevant factors").

¶ 37. Both Sands and Menard sought to present evidence relevant to the appropriate amount of front pay. Because a court must consider all of the relevant facts when determining a front pay award, the circuit court erred by refusing to consider this evidence. Additionally, the supreme court instructed the circuit court to award front pay in order "to make Sands whole[.]" *Sands*, 328 Wis. 2d 647, ¶ 69. The circuit court could not accomplish that directive without considering all of the relevant evidence.[15]

¶ 38. The circuit court may have concluded the evidentiary record was frozen based on the supreme court's reference to the "intentions of the arbitration panel[.]" *See id.* When read in isolation, that phrase seems to suggest that the circuit court should award whatever amount of front pay the arbitrators would have awarded—which would necessarily be based

---

[15] Obviously, the supreme court was not aware of any of the evidence Menard acquired after remand. This makes it all the more important that the circuit court consider Menard's evidence in determining the equities of an appropriate front pay award and deciding whether to grant Menard relief from the judgment confirming the arbitration award.

strictly on the evidence before the arbitrators. However, when read in context, the supreme court's reference to the arbitrators' intentions does not actually limit the evidence the circuit court could consider on remand. The supreme court stated that it was remanding for determination of an appropriate front pay award *"[i]n order to make Sands whole* in accord with the intentions of the arbitration panel[.]" *Id.* (emphasis added). Thus, the supreme court referred only to the fact that the arbitrators intended their award to make Sands whole. The court did not direct the circuit court to figure out how much front pay the arbitrators would have awarded Sands, based on the evidence before them. Accordingly, we agree with both parties that the court should have held an evidentiary hearing on the issue of front pay.

¶ 39. Having determined that the parties were entitled to an evidentiary hearing on front pay, several questions remain regarding the scope of that hearing. First, Menard argues Sands should not be permitted to present evidence that she could have, but failed to, present during the arbitration hearing. Thus, Menard contends Sands cannot present evidence that she intended to work until age seventy-two and that it is common for management-level employees to remain with Menard for long periods of time. We disagree.

¶ 40. The supreme court directed the circuit court to consider the equities of an appropriate front pay award. As Menard concedes, when awarding an equitable remedy, a court must consider all the relevant facts. Menard does not dispute that the evidence Sands seeks to introduce is relevant to calculating an appropriate front pay award. Instead, Menard cites *Joint School District No. 10 v. Jefferson Education Ass'n*, 78 Wis. 2d 94, 116, 253 N.W.2d 536 (1977), for the propo-

470

sition that courts "will not relitigate issues submitted to arbitration." But in *Joint School District No. 10*, the court refused to reconsider an issue that an arbitration panel had actually decided. *See id.* at 118 ("The trial court determined that there is no basis for vacating the arbitrators' decision that the grievance is arbitrable. We agree."). Here, the panel did not actually decide the amount of front pay Sands should receive. Accordingly, nothing in *Joint School District No. 10* prevents the circuit court from considering evidence that Sands could have presented during the arbitration proceedings.

¶ 41. Second, because Sands requested only two years' front pay during arbitration, Menard argues she is judicially estopped from asking the circuit court to award a greater amount. The doctrine of judicial estoppel prevents a party from adopting inconsistent positions in legal proceedings. *Olson v. Darlington Mut. Ins. Co.*, 2006 WI App 204, ¶ 4, 296 Wis. 2d 716, 723 N.W.2d 713. A party seeking to invoke the doctrine must prove three elements:

> First, the later position must be clearly inconsistent with the earlier position; second, the facts at issue should be the same in both cases; and finally, the party to be estopped must have convinced the first court to adopt its position—a litigant is not forever bound to a losing argument.

*Id.* (quoting *State v. Petty*, 201 Wis. 2d 337, 348, 548 N.W.2d 817 (1996)). Menard cannot establish the third element because Sands did not convince the arbitrators to adopt her position. Instead of awarding two years' front pay, as Sands requested, the arbitrators awarded reinstatement. We therefore agree with Sands that the doctrine of judicial estoppel does not apply.

471

¶ 42. Moreover, as Sands points out, at the time she requested two years of front pay, she did not know that the arbitrators would order reinstatement and that Menard would repeatedly and publicly refuse to comply with the arbitrators' award. Accordingly, on remand from the supreme court, Sands sought to introduce evidence that Menard's refusal to reinstate her further damaged her career and diminished her chances of obtaining other employment.[16] If the circuit court had considered and been convinced by this evidence, it would have provided grounds to award more than two years of front pay. Thus, we agree with Sands that her previous request for two years of front pay does not absolutely bar her from recovering a greater amount. Sands' request is merely one factor the circuit court may consider in determining the equities of an appropriate front pay award.

¶ 43. The parties next dispute the effect of Menard's proffered evidence that Sands failed to mitigate her damages. During arbitration, Sands testified she received a job offer in late October 2006 that would

---

[16] Menard argues Sands should not be allowed to present this evidence because the supreme court ultimately reversed the reinstatement award and therefore vindicated Menard's decision not to reinstate Sands. However, Menard was bound to obey the reinstatement order, which was not stayed, during the pendency of its appeal. *See, e.g., Howat v. Kansas*, 258 U.S. 181, 190 (1922) ("[U]ntil [a trial court's] decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.").

Menard also attempts to convince us that Sands' career was not actually harmed by Menard's refusal to reinstate her. That fact is disputed, though, and we again remind Menard that this court may not find facts when the evidence is in dispute. *See Wurtz*, 97 Wis. 2d at 107 n.3.

have paid more than she had earned at Menard. Sands testified she declined the offer because the job involved a very limited practice area. She also testified the job would have required her to move either "out East" or to Chicago. The arbitrators found that Sands failed to mitigate her damages by refusing to accept the October 2006 offer. They therefore determined Sands could not recover any back pay after October 31, 2006.

¶ 44. Because the arbitrators found that Sands failed to mitigate her damages as of October 31, 2006, Menard argues she is barred from recovering any front pay. We disagree for two reasons. First, the arbitrators awarded Sands reinstatement with full knowledge that she had declined a job offer in October 2006. The arbitrators also indicated that, had they not awarded reinstatement, they would have awarded front pay. Clearly, the arbitrators did not believe that Sands' rejection of the October 2006 job offer foreclosed her right to prospective relief.

¶ 45. Second, after reversing the reinstatement award, the supreme court remanded this case with directions that the circuit court determine an appropriate award of front pay. The supreme court was aware that Sands had declined the October 2006 job offer. *See Sands*, 328 Wis. 2d 647, ¶ 20 n.8. Presumably, if the supreme court believed that Sands' failure to accept the October 2006 offer precluded her from receiving front pay, it would not have directed the circuit court to determine an appropriate front pay award.

¶ 46. Menard also argues it should be allowed to present evidence that Sands has failed to mitigate her damages since the date of the arbitrators' award. But, as Sands points out, "the reinstatement award meant that Sands was to have her job back." Sands therefore

argues that, as of the date of the arbitration award, "she had no damages going forward, and there was no reason to seek comparable employment." We agree with Sands that, until the supreme court vacated the reinstatement award, she did not have a duty to mitigate her damages by finding comparable employment. We therefore conclude any evidence that Sands failed to mitigate during the period between the arbitrators' award and the supreme court's decision is irrelevant to determining an appropriate front pay award.

■■■■

¶ 47. However, as Menard notes, the reinstatement award was vacated over two years ago. Consequently, Sands has been aware for some time that reinstatement was not an option. We therefore agree that Menard should be allowed to present evidence that Sands has failed to mitigate her damages since the date of the supreme court's decision. We note, though, that as the employer, Menard has the burden to show that Sands failed to mitigate. *See Salveson v. Douglas Cnty.*, 2001 WI 100, ¶ 52, 245 Wis. 2d 497, 630 N.W.2d 182. To meet this burden, Menard must establish that Sands "was not reasonably diligent in seeking other employment and that there was a reasonable chance [Sands] might have found a comparable position." *See Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1049 (7th Cir. 1999).[17]

---

[17] A comparable job is "one with 'virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status.' " *Salveson v. Douglas Cnty.*, 2001 WI 100, ¶ 52 n.14, 245 Wis. 2d 497, 630 N.W.2d 182 (quoting *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983)). Moreover, a claimant has no obligation to "relocate to a new community." *See Moore v. University of Notre Dame*, 22 F. Supp. 2d 896, 906–07 (N.D. Ind. 1998); *see also BPS Guard Servs., Inc. v. International Union of United Plant Guard*

¶ 48. Finally, Menard argues its after-acquired evidence of Sands' misconduct is an absolute bar to any front pay award. Again, after-acquired evidence refers to evidence of an employee's wrongdoing, discovered after the employee was terminated, "that would have led to [the employee's] termination on legitimate grounds had the employer known about it." *McKennon*, 513 U.S. at 362. To establish an after-acquired evidence defense, the employer must prove not only that the employee committed the misconduct, but also that the misconduct "was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at 362–63.

¶ 49. We agree that Menard should have been allowed to present its after-acquired evidence to the circuit court, but we disagree that such evidence, if proved, would have completely barred Sands from recovering front pay. Admittedly, the United States Supreme Court stated in *McKennon* that "as a general rule in cases [where an employer establishes an after-acquired evidence defense], neither reinstatement nor front pay is an appropriate remedy." *Id.* at 361–62. But,

*Workers of America, Local 228*, 45 F.3d 205, 211 (7th Cir. 1995) (a job located eighty miles from the claimant's home was not "substantially equivalent").

We question whether the position Sands declined in October 2006 actually met these criteria. At Menard, Sands was the head of an in-house legal department encompassing a variety of practice areas. Sands testified she declined the October 2006 job offer because she did not want to be restricted to a single practice area. Also, the October 2006 offer would have required Sands to move out of the Eau Claire area.

475

the Court also stated that "[t]he proper boundaries of remedial relief" in after-acquired evidence cases must be addressed on a case-by-case basis because "the factual permutations and the equitable considerations . . . will vary from case to case." *Id.* at 361. Because of factual differences between this case and *McKennon*, we conclude the "general rule" set forth in *McKennon* does not apply.

¶ 50. The *McKennon* Court reasoned that after-acquired evidence should prevent an employee from recovering damages that accrued *after the date the employer discovered the employee's misconduct,* because the discovery would have prompted the employer to terminate the employee on legitimate grounds. *Id.* at 362. In *McKennon*, the employer discovered the employee's misconduct before the court rendered a final judgment on the employee's claims. *Id.* at 355. Consequently, the misconduct was discovered *before* the date any front pay award would have begun. *See Palasota v. Haggar Clothing Co.,* 499 F.3d 474, 490–91 (5th Cir. 2007) ("[F]ront pay is a prospective remedy that estimates the damage plaintiff will continue to suffer after the date of final judgment as a result of the wrongdoing."). Thus, under the factual circumstances of *McKennon*, front pay was necessarily barred.

¶ 51. In this case, though, Sands' alleged misconduct was not discovered until November or December of 2010. Accordingly, the discovery did not occur until *after* October 19, 2007, the date when an award of front pay would have begun if the arbitrators had not awarded reinstatement.[18] Thus, unlike in *McKennon*,

***

[18] The circuit court concluded Sands' front pay award should be calculated from November 1, 2006—the day after her back pay award ended. We disagree with that conclusion. As noted above, a front pay award compensates the employee for

Sands' front pay damages began to accrue before Menard discovered her alleged misconduct. As a result, the concern that motivated the *McKennon* Court to hold that after-acquired evidence generally bars recovery of front pay is not present in this case. We therefore decline to rule that, under *McKennon*, Sands is absolutely barred from recovering front pay if Menard can prove its after-acquired evidence defense. However, if Menard proves its defense, Sands will be limited to recovering front pay from October 19, 2007 until the date Menard discovered her misconduct.

## III. Attorney fees

¶ 52. We now turn to Menard's arguments regarding Sands' attorney fee award. Menard first argues the circuit court erred by awarding Sands attorney fees incurred during the course of Menard's appeal to the supreme court. A court has discretion to award reasonable attorney fees to the "prevailing party" in a Title VII case. *See* 42 U.S.C. § 2000e-5(k). In addition, under the Fair Labor Standards Act, a court "shall" award attorney fees to the prevailing plaintiff in an Equal Pay Act case. *See* 29 U.S.C. § 216(b); *Garcia v. Oasis Legal Fin. Operating Co.*, 608 F. Supp. 2d 975, 977 (N.D. Ill. 2009). Menard argues that it, rather than Sands, was the prevailing party in the supreme court appeal.

¶ 53. Whether Sands qualifies as a prevailing party under Title VII and the Fair Labor Standards Act

damages suffered after the date a final judgment is entered. *See Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490–91 (5th Cir. 2007). In this case, the arbitrators rendered their final decision on October 19, 2007. That is the date when an award of front pay would have begun, had the panel not awarded reinstatement. As a result, any award of front pay should be calculated from October 19, 2007.

is a question of law that we review de novo. *See Kansas Judicial Watch v. Stout*, 653 F.3d 1230, 1235 (10th Cir. 2011); *see also Credit Acceptance Corp. v. Woodard*, 2012 WI App 43, ¶ 6, 340 Wis. 2d 548, 812 N.W.2d 525 (reviewing de novo whether a party qualified as a prevailing party under the Wisconsin Consumer Act). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–279 (1st Cir. 1978)).

¶ 54. Menard argues Sands did not prevail on any significant issue in the supreme court appeal. As Menard puts it, "[Menard], not Sands, was the party that opposed and appealed the arbitrators' reinstatement award. . . . [Menard], not Sands, was the party with which the Supreme Court ultimately agreed." Menard's summary oversimplifies the issue. After concluding that the arbitrators exceeded their power by ordering reinstatement, the supreme court stated:

> Both parties agree that the court may vacate the reinstatement portion of the award while leaving the rest intact. Menard urges us to vacate the reinstatement award and thus end the dispute. Sands argues that if we find reinstatement improper, we should remand for an award of front pay to effectuate the panel's clear intention to make the successful plaintiff whole. . . . We agree with Sands.

*Sands*, 328 Wis. 2d 647, ¶¶ 67–68 (footnote omitted). Because the supreme court agreed that Sands was entitled to front pay, Sands succeeded on a significant issue in Menard's appeal. Consequently, Sands qualifies as a prevailing party under Title VII and the Fair Labor

Standards Act, and the circuit court properly allowed her to recover attorney fees.[19]

¶ 55. However, we agree with Menard that the circuit court erroneously exercised its discretion in determining the amount of attorney fees Sands could recover. *See Duello v. Board of Regents*, 220 Wis. 2d 554, 561, 583 N.W.2d 863 (Ct. App. 1998) (determining the amount of attorney fees is within the circuit court's discretion). To calculate an attorney fee award, a court should begin by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). The court may then adjust this "lodestar" figure either upwards or downwards, based on a variety of factors. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). The party seeking attorney fees bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Id.* This includes establishing that the requested hourly rates are in line with prevailing rates in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984).

¶ 56. Menard contends Sands failed to meet her burden of proving the reasonableness of her claimed attorney fees. Menard notes that Sands did not submit any evidence establishing that the hourly rates charged by her attorneys were consistent with prevailing rates in the relevant community. Menard also points out that

---

[19] Our determination that Sands was a "prevailing party" in Menard's appeal to the supreme court does not necessarily mean that she is entitled to recover the full amount of attorney fees incurred in that appeal. Where a prevailing plaintiff "has achieved only partial or limited success," the circuit court has discretion to reduce the plaintiff's attorney fee award to avoid awarding fees for unsuccessful claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983).

Sands' attorneys represented Debra in a separate lawsuit, and Sands' fee petition "included numerous entries for legal work performed in that separate suit[.]" Sands does not dispute these assertions.

¶ 57. The circuit court found that Sands' fee request "border[ed] on the obscene" and "instantaneously shocked the conscience." The court also found that Sands did not provide sufficient information for the court to determine "what a reasonable hourly rate is and what a reasonable amount expended would be." Thus, the court acknowledged that Sands had not met her burden of proof. However, instead of dismissing Sands' fee petition or requiring her to provide additional information, the court awarded Sands the exact amount of attorney fees expended by Menard. Sands does not cite any authority allowing a court to relieve a litigant of its burden to prove the reasonableness of a fee request or to award fees based solely on the amount the opposing party spent. Moreover, the circuit court did not even attempt to determine a reasonable hourly rate or the number of hours reasonably expended on the litigation. *See Blanchard*, 489 U.S. at 94. The court therefore failed to apply the proper legal standards for awarding attorney fees. As a result, the court's attorney fee award constitutes an erroneous exercise of discretion. *See Johnson v. Cintas Corp. No. 2*, 2012 WI 31, ¶ 22, 339 Wis. 2d 493, 811 N.W.2d 756 (court erroneously exercises its discretion by applying an improper legal standard).[20]

*By the Court.*—Judgment reversed and cause remanded with directions.

[20] The effect of our decision is to return the parties to "square one" on the issue of attorney fees, with the exception of the prevailing party issue.