RICE LAKE HARLEY DAVIDSON,
Petitioner-Appellant-Cross-Respondent,†

v.

STATE of Wisconsin
LABOR AND INDUSTRY REVIEW COMMISSION,
Respondent-Respondent,

Diane MACK,
Respondent-Respondent-Cross-Appellant.

Court of Appeals

*No. 2014AP13. Submitted on briefs August 19, 2014.*
*—Decided September 16, 2014.*

2014 WI App 104

(Also reported in 855 N.W.2d 882.)

† Petition for Review denied.

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *Michael D. Schwartz* and *Brandon M. Schwartz* of *Schwartz Law Firm*, Oakdale, MN.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the briefs of *Peter J. Fox* of *Fox & Fox*, S.C., Monona.

On behalf of the respondent-respondent, the cause was submitted on the brief of *David C. Rice*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Stark, J., and Thomas Cane, Reserve Judge.

¶ 1. STARK, J. Rice Lake Harley Davidson appeals a circuit court order affirming a decision of the State of Wisconsin Labor and Industry Review Commission (LIRC). LIRC concluded Rice Lake Harley violated the Wisconsin Fair Employment Act (WFEA) by engaging in wage discrimination against its former employee, Diane Mack, on the basis of sex.

¶ 2. On appeal, Rice Lake Harley argues: (1) Mack's wage discrimination claim was time barred because it was not filed within 300 days after the alleged discrimination took place; (2) LIRC's decision that Rice Lake Harley discriminated against Mack was not supported by credible and substantial evidence; and (3) Mack is not entitled to attorney fees because she is

not a prevailing party. We conclude Mack's wage discrimination claim was timely, pursuant to our decision in *Abbyland Processing v. LIRC*, 206 Wis. 2d 309, 557 N.W.2d 419 (Ct. App. 1996). We further conclude credible and substantial evidence supports LIRC's decision that Rice Lake Harley discriminated against Mack on the basis of sex. In addition, we conclude Mack was entitled to recover reasonable attorney fees. We therefore affirm as to all issues raised in Rice Lake Harley's appeal.

¶ 3. Mack cross-appeals, arguing the circuit court erroneously exercised its discretion when it awarded her only two-thirds of the attorney fees she requested. We agree with Mack that the court erroneously exercised its discretion. We therefore reverse in part and remand with directions that the court award Mack the full amount of her requested attorney fees.

## BACKGROUND

¶ 4. Rice Lake Harley hired Mack to work as a motorcycle salesperson on July 9, 2003. Her employment was terminated on February 9, 2009. Mack filed a complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development on March 23, 2009, alleging Rice Lake Harley unlawfully terminated her employment on the basis of sex. Mack also alleged Rice Lake Harley discriminated against her on the basis of sex by paying her less than a male colleague, Harold Dodge. Under the WFEA, it is unlawful for any employer to terminate an individual from employment or to discriminate against an individual in compensation based on the individual's sex. WIS. STAT. §§ 111.321, 111.322(1), 111.325, 111.36(1)(a).[1]

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

¶ 5. The Equal Rights Division issued an initial determination on August 18, 2009, finding no probable cause to believe Rice Lake Harley terminated Mack's employment on the basis of sex, but finding probable cause to believe Rice Lake Harley discriminated against her in compensation. Mack did not challenge the no-probable-cause finding regarding her unfair termination claim. On November 22, 2010, a hearing on Mack's wage discrimination claim was held before an administrative law judge (ALJ). The following facts are taken from the hearing transcript and exhibits.

¶ 6. Before being hired at Rice Lake Harley, Mack had worked for two years as the manager of a bar in Menomonie, making ten dollars per hour plus tips. She had owned and ridden a motorcycle for about two years, but she was not a member of any motorcycle club. She had never before lived or worked in Rice Lake.

¶ 7. Aaron Miley, the general manager of Rice Lake Harley, hired Mack and set her starting salary at about $28,000 per year. The owner of Rice Lake Harley, Chris Brekken, was not involved in those decisions. In addition to selling motorcycles, Mack's duties at Rice Lake Harley included tracking inventory and completing financing applications for customers. In September 2004, Mack's annual salary increased to about $34,000.

¶ 8. In February 2004, Brekken hired Dodge as a sales manager at Rice Lake Harley at an annual salary of $56,000.[2] Dodge had lived in Rice Lake for over thirty

[2] Mack cites evidence suggesting Dodge was hired as a motorcycle salesperson. However, LIRC found that Dodge was hired as a sales manager, and credible and substantial evidence supports that finding. *See Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶ 25, 349 Wis. 2d 234, 833 N.W.2d 665 (LIRC's factual findings are upheld if supported by credible and substantial evidence).

years, was a longtime owner and rider of Harley-Davidson motorcycles, and was president of the local Harley Owners Group. Brekken testified he believed Dodge's experience with motorcycles and reputation in the local Harley community would attract customers to Rice Lake Harley. Brekken further asserted Dodge "was hired for more than just being a sales manager"—he was "an overall advisor[,]" "goodwill ambassador," and "advocate" for the dealership.

¶ 9. Before being hired at Rice Lake Harley, Dodge was employed as a quality manager at Rice Lake Weighing Systems. Brekken testified he knew Dodge was involved in the ISO certification process at Rice Lake Weighing Systems, and he hired Dodge in part so that Dodge could help one of Brekken's other companies maintain its ISO certification.[3] Brekken testified he set Dodge's annual salary at $56,000 to match what Dodge was making at Rice Lake Weighing Systems.

¶ 10. Dodge ultimately failed to meet Brekken's expectations as sales manager. Consequently, in January 2005, Patrick Sterling was hired as sales manager, at an annual salary of $52,000. However, Dodge continued to work at Rice Lake Harley as a motorcycle salesperson and continued to receive an annual salary of $56,000.

¶ 11. In February 2006, Mack's salary decreased to about $24,000 per year plus commissions, and Dodge's salary decreased to $36,400 per year plus commissions. Mack's salary was raised to $27,040 per

---

[3] "ISO" refers to the International Organization for Standardization, which describes itself as "an independent, nongovernmental membership organization and the world's largest developer of voluntary International Standards." *See* About ISO, http://www.iso.org/iso/home/about.htm (last visited August 27, 2014).

year plus commissions on March 20, 2007, and it remained at that level until her discharge. Kris Glinski, a male salesperson hired by Rice Lake Harley on March 17, 2007, was also paid $27,040 per year plus commissions.

¶ 12. Mack initially testified she did not know "for certain" that Dodge was making more money than her until after she filed her employment discrimination complaint. However, Mack later conceded she was told when Dodge was hired in February 2004 that he would receive double her pay. Mack testified she did not complain about the wage disparity while employed at Rice Lake Harley because she was afraid of losing her job.

¶ 13. Following the administrative hearing, Rice Lake Harley filed a brief arguing Mack's wage discrimination claim was untimely under Wis. Stat. § 111.39(1), which gives the Department of Workforce Development authority to "receive and investigate a complaint charging discrimination . . . if the complaint is filed with the department no more than 300 days after the alleged discrimination . . . occurred." Rice Lake Harley argued the 300–day limitations period began to run in February 2004, when Rice Lake Harley made the decision to pay Dodge more than Mack and Mack "knew or reasonably should have known of the wrong that was committed against her." Mack's wage discrimination complaint was not filed until March 23, 2009—over 300 days after February 2004.

¶ 14. The ALJ rejected Rice Lake Harley's argument, reasoning Mack's complaint was timely under the paycheck accrual rule set forth in the federal Lilly Ledbetter Fair Pay Act of 2009 (Ledbetter Act). Pursuant to the Ledbetter Act,

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when . . . an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e–5(e)(3)(A). Thus, under the Ledbetter Act, "each paycheck that stems from a discriminatory compensation decision or pay structure is a tainted, independent employment-action that commences the administrative statute of limitations." *Noel v. The Boeing Co.*, 622 F.3d 266, 271 (3rd Cir. 2010). The ALJ determined Mack's complaint was timely "[u]nder the measurements of timeliness adopted in the [Ledbetter Act]" because it was filed within 300 days after Mack received a paycheck resulting from an allegedly discriminatory compensation decision.

¶ 15. The ALJ further concluded Rice Lake Harley violated the WFEA by discriminating against Mack in compensation on the basis of sex from January 2005, when Sterling replaced Dodge as sales manager, until February 2009, when Mack's employment was terminated. As a remedy, the ALJ awarded Mack the difference between her compensation and the average compensation received by Dodge and Glinski from March 23, 2007—two years before her complaint was filed—until February 9, 2009—the date her employment was terminated.[4] The ALJ also awarded Mack two-thirds of the attorney fees and costs she requested, or $26,235. The ALJ reasoned a one-third reduction in the fee

---

[4] The Fair Employment Act provides that "[b]ack pay liability may not accrue from a date more than 2 years prior to the filing of a complaint with the department." Wis. Stat. § 111.39(4)(c).

award was appropriate because Mack failed to recover the entire amount of back pay she requested.

¶ 16. Rice Lake Harley petitioned for review of the ALJ's decision, which LIRC subsequently affirmed. However, LIRC rejected the ALJ's reasoning on the timeliness issue, stating the ALJ's reliance on the Ledbetter Act was "erroneous and should be clarified." LIRC explained:

> The fact that the [Ledbetter Act] was passed, in itself, does not change the interpretation of the WFEA. There is no *ipso facto* incorporation of the Federal Civil Rights Act in the [WFEA]. Wisconsin courts must construe Wisconsin statutes as it is believed the Wisconsin legislature intended, regardless of how Congress may have intended comparable statutes. [LIRC] is not adopting the [Ledbetter Act] into the WFEA.

(Citations omitted.)

¶ 17. Nevertheless, LIRC found that Mack's wage discrimination complaint was timely under our decision in *Abbyland* because Mack received discriminatory compensation during the 300–day period before filing her complaint. LIRC acknowledged it had interpreted WIS. STAT. § 111.39(1) differently in prior cases. However, LIRC explained:

> In early decisions, both [LIRC] and the Personnel Commission recognized discrimination in pay as a "continuing violation.
>
> . . . .
>
> In [*Abbyland*], the court of appeals confirmed that pay discrimination should be treated as a continuing violation. The court held that LIRC properly considered evidence of events occurring more than 300 days prior to the filing of the complaint in deciding whether there had been pay discrimination.

636

. . . .

The holding of the court of appeals in *Abbyland* that salary discrimination is an ongoing matter and can be challenged if the result of the discrimination occurs both within and outside the statute of limitations[] has not been questioned, limited, or overruled by Wisconsin's appellate courts.

In years subsequent to *Abbyland*, however, LIRC issued decisions which relied more on federal court interpretations of the statute of limitations in Title VII, and those interpretations increasingly moved away from the notion of salary discrimination as an ongoing matter that had been established by *Abbyland*. . . .

The course taken by such decisions was contrary to the holding of *Abbyland* that "[s]alary discrimination is an ongoing matter and can be challenged if the result of the discrimination occurs both within and outside the statute of limitations." . . .

While it has long been recognized that it can be appropriate to look to federal court decisions interpreting Title VII as guidance for interpretations of the [WFEA], . . . it has also been recognized that there are limits to this, and that there can be situations in which Wisconsin should adhere to its own path[.] . . .

[LIRC] believes that its reliance on . . . federal cases on this issue was misplaced. First and foremost, [LIRC] is clearly bound by the Wisconsin court of appeals' decision in *Abbyland* . . . . Second, Congress has expressly stated [in the Ledbetter Act] that the direction the federal courts were taking in the cases relied upon by [LIRC] . . . [was] contrary to the intent of Congress, undermined the statutory protections, ignored the reality of wage discrimination, and impaired the Federal Civil Rights Act they were interpreting. . . .

[LIRC's] decisions following the federal cases . . . were following a blind and narrow alley and [LIRC] believes

637

it is appropriate to right its direction to the binding precedent in *Abbyland*. . . . [W]here, as here, it becomes clear that federal court decisions upon which [LIRC] relied were contrary to state court precedent and erroneous interpretations of the federal law . . . [LIRC] believes it is appropriate to find its bearings and right its course in its interpretation of the law.

¶ 18. In addition to determining Mack's complaint was timely, LIRC agreed with the ALJ that Rice Lake Harley violated the WFEA by discriminating against Mack in compensation on the basis of sex, and it affirmed the ALJ's awards of back pay and attorney fees. LIRC also awarded Mack an additional $9,815 in attorney fees and costs incurred in the LIRC proceedings. LIRC elected not to apply any "partial success" reduction to the attorney fee award, reasoning Mack achieved complete success on every issue raised in Rice Lake Harley's petition for review.

¶ 19. Rice Lake Harley appealed LIRC's decision to the circuit court, and the circuit court affirmed. The court also awarded Mack additional attorney fees and costs for work performed in the circuit court proceedings. However, following the ALJ's approach, the court awarded only two-thirds of the attorney fees and costs Mack requested. Rice Lake Harley now appeals the order affirming LIRC's decision, and Mack cross-appeals.

## DISCUSSION

### I. Rice Lake Harley's appeal

#### A. Timeliness of Mack's complaint

¶ 20. On appeal, Rice Lake Harley first argues Mack's complaint was untimely under WIS. STAT. § 111.39(1) because the 300–day limitations period be-

638

gan to run in February 2004, when Rice Lake Harley decided to pay Dodge more than Mack and when Mack knew or should have known about the pay disparity. In contrast, LIRC and Mack argue Mack's complaint was timely because she received discriminatory compensation during the 300–day period before her complaint was filed.[5]

¶ 21. We review LIRC's decision, not the decision of the circuit court. *Knight v. LIRC*, 220 Wis. 2d 137, 147, 582 N.W.2d 448 (Ct. App. 1998). Whether Mack's complaint was timely under WIS. STAT. § 111.39(1) is a question of law. *See McNeil v. Hansen*, 2007 WI 56, ¶ 7, 300 Wis. 2d 358, 731 N.W.2d 273 (statutory interpretation and application to undisputed facts are questions of law). We are not bound by an agency's conclusions of law, but we may accord them one of three levels of deference, depending on the circumstances. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996).

---

[5] Mack also argues Rice Lake Harley forfeited its right to challenge the timeliness of her complaint by failing to raise the issue in its petition for review of the ALJ's decision. LIRC chose to address the timeliness issue even though it was not raised in the petition for review, reasoning it was a "significant [issue] that [could] be expected to arise again and again."

The forfeiture rule is one of judicial administration, and we have inherent authority to disregard a forfeiture and address the merits of an unpreserved issue in exceptional cases. *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 17, 273 Wis. 2d 76, 681 N.W.2d 190. "When [a forfeited] issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision," we may exercise our discretion to address the issue. *Apex Elecs. Corp. v. Gee*, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). Those conditions are present in this case. Consequently, even if Rice Lake Harley forfeited its right to review of the timeliness issue, we would nevertheless exercise our discretion to address it.

¶ 22. Great weight deference is appropriate where: (1) the agency is charged by the legislature with administering the statute at issue; (2) the agency's interpretation of the statute is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming its interpretation; and (4) the agency's interpretation will provide uniformity in the statute's application. *Brown v. LIRC*, 2003 WI 142, ¶ 16, 267 Wis. 2d 31, 671 N.W.2d. 279. Under great weight deference, we will sustain an agency's legal conclusion as long as it is reasonable, even if an alternative view is equally or more reasonable. *Id.*, ¶ 19.

¶ 23. "Due weight deference is appropriate when an agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than a court to interpret and apply a statute." *Id.*, ¶ 15. Under due weight deference, we will uphold the agency's interpretation if it is reasonable and comports with the purpose of the statute, unless we determine another interpretation is more reasonable. *UFE Inc.*, 201 Wis. 2d at 286–87.

¶ 24. No deference is appropriate where an issue is clearly one of first impression or where an agency's position on an issue has been so inconsistent that it provides no real guidance. *Id.* at 285. When no deference is given, a court engages in an independent determination of the legal questions presented, albeit benefiting from the analyses of the agency and any lower courts that have reviewed the agency's action. *Brown*, 267 Wis. 2d 31, ¶ 14.

¶ 25. The parties dispute the level of deference we should accord LIRC's conclusion that Mack's complaint

was timely under WIS. STAT. § 111.39(1). Rice Lake Harley argues no deference is appropriate because LIRC's interpretation of the statute was inconsistent with its decisions in prior cases. LIRC and Mack concede LIRC's interpretation of § 111.39(1) in this case was inconsistent with its prior decisions. Nevertheless, they argue due weight deference is appropriate because LIRC is responsible for administering the WFEA and has extensive experience applying its provisions.

¶ 26. We agree with LIRC and Mack that due weight deference is appropriate. Although it is undisputed that LIRC's decision in this case conflicted with its previous decisions, no deference is appropriate only where an agency's position has been so inconsistent that it provides no real guidance. *UFE Inc.*, 201 Wis. 2d at 285. "[A]n agency's change in position does not, by itself, constitute an inconsistency that results in 'no real guidance.' " *County of Dane v. LIRC*, 2007 WI App 262, ¶ 17, 306 Wis. 2d 830, 744 N.W.2d 613. Instead, an agency's inconsistent decisions may result in a lack of guidance where an agency "purport[s] to adhere to a rule, but appl[ies] it inconsistently to various similar fact situations, so that parties are left to wonder how the agency might apply the rule to their facts." *Id.* A lack of guidance may also result where an agency "frequently change[s] position without acknowledging prior contrary positions, leaving parties unable to reasonably predict the view the agency will adopt in future cases." *Id.*

¶ 27. In *County of Dane*, we addressed the level of deference applicable to LIRC's decision that a limp could constitute a "disfigurement" under Wisconsin worker's compensation law. *Id.* In a 1994 decision, LIRC had concluded a limp was not a disfigurement. *Id.*,

¶¶ 9–10. Prior to that, in a 1986 decision, LIRC had allowed a disfigurement award based in part on a limp. *Id.*, ¶ 10. Given these changes in LIRC's position, we concluded great weight deference was inappropriate because LIRC's interpretation of the relevant statute was not "one of long standing[.]" *Id.*, ¶ 12. Nevertheless, we concluded due weight deference was appropriate because the changes in LIRC's position were relatively infrequent, and LIRC had acknowledged its deviation from the 1994 decision and provided an explanation for the change. *Id.*, ¶ 17.

¶ 28. A similar analysis is applicable in this case. Because LIRC's interpretation of Wis. Stat. § 111.39(1) has changed over time, it is not "one of long standing[,]" and great weight deference would be inappropriate. *See County of Dane*, 306 Wis. 2d 830, ¶ 12. However, as in *County of Dane*, the changes in LIRC's position have been relatively infrequent, and LIRC has acknowledged and explained the changes. Moreover, LIRC is charged with interpreting and applying the WFEA, *Knight*, 220 Wis. 2d at 150, and it is undisputed that LIRC has at least "some experience in the area[,]" *Brown*, 267 Wis. 2d 31, ¶ 15. Consequently, LIRC's interpretation of § 111.39(1) is entitled to due weight deference. Under this standard, we will uphold LIRC's decision if it is reasonable and comports with the purpose of the statute, as long as no other interpretation is more reasonable. *See UFE Inc.*, 201 Wis. 2d at 286–87.

■

¶ 29. Wisconsin Stat. § 111.39(1) requires a complaint to be filed with the Department of Workforce Development within 300 days after the alleged discrimination "occurred." The statute does not define the word "occurred," and nothing in the WFEA specifies whether compensation discrimination occurs when the employer

makes a discriminatory compensation decision and the employee knows of the discrimination—as Rice Lake Harley asserts—or when the employee actually receives payment pursuant to the discriminatory compensation decision—as LIRC and Mack assert. On the face of the statute, both of these interpretations are reasonable. However, in light of our decision in *Abbyland*, the interpretation advanced by LIRC and Mack is more reasonable.

¶ 30. In *Abbyland*, Joanne Forster claimed that her former employer had discriminated against her in compensation on the basis of sex and marital status. *Abbyland*, 206 Wis. 2d at 312–13. Forster was terminated on May 17, 1991, and filed her complaint on March 6, 1992. *Id.* at 313. Therefore, the 300–day limitation period in Wis. Stat. § 111.39(1) commenced on May 11, 1991. *Abbyland*, 206 Wis. 2d at 313.

¶ 31. At the administrative hearing, Forster presented evidence that, sometime before May 11, 1991, her immediate supervisor informed the company's president that Forster was being paid substantially less than a male colleague. *Id.* at 313–14. The president refused to pay Forster more, making "repeated comments that her husband [was] earning enough" and "demeaning references to Forster based on her gender[.]" *Id.* at 314, 319. Based on these comments, LIRC concluded the employer had discriminated against Forster in compensation based on her gender and marital status. *Id.* at 314. It awarded Forster two years' back pay as a remedy. *Id.*

¶ 32. On appeal, the employer argued LIRC improperly considered the company president's statements because they were made more than 300 days before Forster filed her complaint. *Id.* We rejected the employer's argument, reasoning:

> *Salary discrimination is an ongoing matter and can be challenged if the result of the discrimination occurs both within and outside the statute of limitations.* In this case, Forster was entitled to challenge the salary *paid during the relevant period of time,* May 11–May 17, 1991, which is that period within the 300–day statute of limitations.

*Id.* at 316 (emphasis added). We further stated the company president's "acknowledgement of the discriminatory reasons for [Forster's] salary level [was] sufficient evidence of the discriminatory salary *paid Forster within the statute of limitations period.*" *Id.* at 317 (emphasis added). The president's statements were "relevant to whether Forster's level of compensation was set for improper discriminatory reasons[,]" and, consequently, LIRC did not err in considering the statements. *Id.*

¶ 33. *Abbyland* clearly held that compensation discrimination is actionable if an employee received payment within the 300–day period before filing his or her complaint pursuant to a discriminatory compensation decision. It does not matter that the discriminatory compensation decision was made before the 300–day period, nor does it matter when the employee became aware of the discrimination. If the employee received even one paycheck pursuant to the discriminatory compensation decision within 300 days before filing his or her complaint, the complaint is timely.

¶ 34. *Abbyland* is binding precedent and is directly on point. *See Cook v. Cook,* 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997) (Only the supreme court has the power to overrule, modify, or withdraw language from a published court of appeals opinion.). In light of *Abbyland,* LIRC's interpretation of Wis. Stat. § 111.39(1) is more reasonable than the contrary inter-

pretation advanced by Rice Lake Harley. Thus, even though the decision to pay Mack less than Dodge was made more than 300 days before Mack filed her complaint, and even though Mack knew about the discrimination as early as February 2004, LIRC properly concluded her complaint was timely because she was paid less than Dodge within the 300–day limitations period.

¶ 35. Rice Lake Harley argues LIRC misinterpreted *Abbyland*. According to Rice Lake Harley, *Abbyland* actually held that "the setting of discriminatory compensation must be made within the 300[-]day statute of limitations." (Emphasis omitted.) We disagree. In *Abbyland*, the decision to pay Forster less based on her sex and marital status was clearly made more than 300 days before she filed her complaint, as evidenced by the company president's statements. Nonetheless, Forster's complaint was timely because she actually received a discriminatory payment within the 300–day limitations period. The *Abbyland* court specifically stated salary discrimination is actionable "if the *result* of the discrimination occurs both within and outside the statute of limitations." *Abbyland*, 206 Wis. 2d at 316 (emphasis added). The *result* of compensation discrimination is *payment* pursuant to a discriminatory compensation decision.

¶ 36. Rice Lake Harley next argues LIRC's interpretation of *Abbyland* conflicts with our decision in *Bowen v. LIRC*, 2007 WI App 45, ¶ 15, 299 Wis. 2d 800, 730 N.W.2d 164, where we stated:

> *Abbyland* was a sex-and marital-status discrimination case under the Wisconsin Fair Employment Act. It upheld [LIRC's] determination that acts antedating the start of the limitations period were admissible to show "intent or state of mind" of the party allegedly violating

the equal-employment law, as long as they were not "unduly remote" from the incidents alleged to be within the limitations period.

(Citations omitted.) This partial summary of *Abbyland* does not conflict with LIRC's interpretation. Although *Bowen* did not reference *Abbyland*'s holding that compensation discrimination is actionable if the result of the discrimination occurred both within and outside the statute of limitations, that does not make *Bowen* inconsistent with LIRC's interpretation of *Abbyland*.

¶ 37. Rice Lake Harley also claims LIRC's interpretation of *Abbyland* conflicts with *Bammert v. LIRC*, 2000 WI App 28, ¶ 14 n.3, 232 Wis. 2d 365, 606 N.W.2d 620 (WI App 1999), where we stated, "In *Abbyland*, this court concluded that an employer had discriminated against its employee based upon her gender and marital status in setting her salary level." (Emphasis added.) Again, this is a correct statement and does not conflict with LIRC's interpretation of *Abbyland*. The employer in *Abbyland* indisputably discriminated against Forster by setting her salary at a level lower than that of her male colleagues. However, the discrimination was actionable under Wis. Stat. § 111.39(1) because Forster received a payment pursuant to the discriminatory compensation decision within 300 days of filing her complaint.

¶ 38. In further support of its position, Rice Lake Harley cites *Hilmes v. DILHR*, 147 Wis. 2d 48, 50, 433 N.W.2d 251 (Ct. App. 1988). There, we stated discrimination on the basis of sex "occurs when the employer acts and the employee knows about it, not when the effects of the action are most painfully felt." However, *Hilmes* is distinguishable because it involved a discriminatory termination claim, not a discriminatory compen-

sation claim.[6] Termination of employment is a discrete act. Conversely, compensation discrimination is an ongoing wrong in which each paycheck represents a new offense. *See Abbyland*, 206 Wis. 2d at 316.

¶ 39. Rice Lake Harley next argues LIRC's interpretation of WIS. STAT. § 111.39(1) is unreasonable because it conflicts with LIRC's prior decisions. We disagree. *Abbyland* is binding precedent, and pursuant to *Abbyland*, Mack's complaint was timely. LIRC had no authority to disregard *Abbyland*, regardless of how it ruled in previous cases. Moreover, LIRC's decision in this case provided a lengthy, persuasive explanation of why LIRC decided to deviate from its prior decisions. Rice Lake Harley does not explain why LIRC should be bound by prior decisions it has reasonably concluded are incorrect.

¶ 40. Rice Lake Harley also asserts LIRC's decision in this case improperly incorporated the Ledbetter Act's paycheck accrual rule into the WFEA. However, LIRC specifically disavowed any reliance on the Ledbetter Act and clearly stated its decision was based on *Abbyland*. Although LIRC observed in passing that *Abbyland* appeared consistent with Congress's decision to adopt the Ledbetter Act, that is a far cry from incorporating the Ledbetter Act into the WFEA.

¶ 41. Finally, citing 2011 Wisconsin Act 219, Rice Lake Harley argues the legislature "addressed and [took] action with regards to WIS. STAT. § 111.39" after the Ledbetter Act was adopted, but it "left untouched

---

[6] The issue in *Hilmes v. DILHR*, 147 Wis. 2d 48, 50, 433 N.W.2d 251 (Ct. App. 1988), was whether the discrimination "occurred" when the complainant was told she was fired or when the termination was effective. We held "the word 'occurred' . . . as applied to the facts of this case, means the date of notice of termination." *Id.* at 53.

the 300[-]day statute of limitations[.]"[7] According to Rice Lake Harley, this shows the legislature intentionally declined to adopt a paycheck accrual rule like the one in the Ledbetter Act. However, Rice Lake Harley does not cite any legislative history supporting this argument. More importantly, there was no need for the legislature to amend § 111.39(1) in order to adopt a paycheck accrual rule because such a rule was already in effect pursuant to our decision in *Abbyland*.

¶ 42. For these reasons, we conclude LIRC reasonably determined Mack's complaint was timely under WIS. STAT. § 111.39(1). Rice Lake Harley has not presented a more reasonable interpretation of the statute. Consequently, applying due weight deference, we must uphold LIRC's determination that Mack's complaint was timely. *See UFE Inc.*, 201 Wis. 2d at 286–87.

### B. Evidence supporting LIRC's finding of discrimination

¶ 43. Rice Lake Harley next challenges LIRC's finding that Rice Lake Harley discriminated against Mack in compensation on the basis of sex. The WFEA prohibits discrimination in "compensation paid for equal or substantially similar work . . . on the basis of sex where sex is not a bona fide occupational qualification." WIS. STAT. § 111.36(1)(a).

¶ 44. When considering a discrimination claim under WIS. STAT. § 111.36(1)(a), we may look for guidance to cases interpreting the federal Equal Pay Act.

---

[7] 2011 Wisconsin Act 219 eliminated the ability to recover compensatory and punitive damages for employment discrimination and for unfair honesty or genetic testing. *See* 2011 Wis. Act 219, §§ 1–2.

*See Hiegel v. LIRC*, 121 Wis. 2d 205, 215, 359 N.W.2d 405 (Ct. App. 1984) (noting the "equal-pay-for-substantially-equal-work concept" is "clearly embodied" in both the WFEA and the Equal Pay Act). Under the Equal Pay Act analysis, a complainant must first make a prima facie showing that: (1) different wages were paid to employees of opposite sexes; (2) the employees performed equal work that required equal skill, effort, and responsibility; and (3) the employees had similar working conditions. *Howard v. Lear Corp. EEDS and Interiors*, 234 F.3d 1002, 1004 (7th Cir. 2000). The complainant is not required to show that the employer acted with discriminatory intent. *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998). If the complainant establishes a prima facie case, the burden of persuasion shifts to the employer to prove the pay disparity is justified by: (1) a merit system; (2) a seniority system; (3) a system that measures earnings by quantity or quality of production; or (4) any factor other than sex. *Howard*, 234 F.3d at 1004–05.

### i. Prima facie showing

¶ 45. Rice Lake Harley first argues Mack failed to make a prima facie showing of discrimination. Specifically, Rice Lake Harley argues LIRC erroneously concluded Mack and Dodge performed equal work that required equal skill, effort, and responsibility. *See id.* at 1004. Jobs involve equal work requiring equal skill, effort, and responsibility when they share a " 'common core of tasks' " or when " 'a significant portion of the two jobs is identical.' " *Id.* at 1005 (quoting *Fallon v. Illinois*, 882 F.2d 1206, 1209 (7th Cir. 1989)). In addition, there

must be no "additional tasks" that make the jobs "substantially different." *Id.* (quoting *Fallon*, 882 F.2d at 1209).

¶ 46. Whether two jobs involve equal work requiring equal skill, effort, and responsibility is a question of fact. *See id.* LIRC's findings of fact are conclusive on appeal as long as they are supported by credible and substantial evidence. *Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶ 25, 349 Wis. 2d 234, 833 N.W.2d 665. Substantial evidence "does not constitute the preponderance of the evidence. The test is whether reasonable minds could arrive at the same conclusion [LIRC] reached." *Holy Name Sch. v. DILHR*, 109 Wis. 2d 381, 386, 326 N.W.2d 121 (Ct. App. 1982). Our role on appeal is to search the record for evidence supporting LIRC's factual findings, not to search for evidence against them. *See Vande Zande v. DILHR*, 70 Wis. 2d 1086, 1097, 236 N.W.2d 255 (1975).

¶ 47. Here, credible and substantial evidence supports LIRC's finding that Mack and Dodge performed equal work requiring equal skill, effort, and responsibility. It is undisputed that, from January 2005 until Mack's discharge, both Mack and Dodge worked as motorcycle salespersons. Brekken testified the "most important part" of both their jobs was "selling motorcycles." In addition, both Mack and Dodge were responsible for completing financing applications and other paperwork associated with motorcycle sales. On this evidence, LIRC could reasonably find that Mack's and Dodge's positions shared a common core of tasks.

¶ 48. Rice Lake Harley argues Dodge performed additional duties that made his job substantially different from Mack's. In particular, Rice Lake Harley asserts

Dodge was hired as an advisor, goodwill ambassador, and advocate for the dealership. However, we agree with LIRC that there is "a shortage of specific evidence about what Dodge actually *did* on his job, apart from selling motorcycles, which constituted the extra duties [that Rice Lake Harley] claims he did." In other words, while Rice Lake Harley claims Dodge performed extra duties as an advisor, goodwill ambassador, and advocate, it failed to provide evidence of any specific tasks Dodge performed pursuant to those roles.

¶ 49. Moreover, the only evidence regarding Dodge's additional duties came from Brekken's testimony. LIRC specifically concluded Brekken was not a "reliable source of information" about Mack's and Dodge's responsibilities because he lived ninety miles from Rice Lake, was only present at the dealership three days per week, and was not involved in the dealership's day-to-day operations. We defer to LIRC's credibility determinations. *See Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 418, 280 N.W.2d 142 (1979).

¶ 50. Rice Lake Harley also relies on Brekken's testimony that he hired Dodge in part because he believed Dodge could help one of Brekken's other companies maintain its ISO certification. However, Brekken conceded Dodge "never really did any of the . . . actual ISO certification stuff" for that company. This testimony supports LIRC's finding that Dodge did not actually perform any additional duties related to ISO certification.

¶ 51. Rice Lake Harley next argues Dodge's and Mack's jobs were not equal because they did not require equal skill. Specifically, Rice Lake Harley asserts Dodge's "life-long and extensive experience with Harley[-]Davidson motorcycles, Harley-Davidson cus-

tomers and the Rice Lake community made him significantly more able to ... perform his more valuable duties at [Rice Lake Harley]." This argument fails for two reasons. First, it depends on Rice Lake Harley's claim, which LIRC reasonably rejected, that Dodge performed additional duties as an advisor, goodwill ambassador, and advocate. Second, under the equal work analysis, the operative question is whether two *jobs* require equal skill, not whether the *employees* performing those jobs possess equal skills. *Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 914 (9th Cir. 1983). It is therefore irrelevant that Dodge had more skill and experience with motorcycles than Mack.

¶ 52. Finally, Rice Lake Harley asserts Mack could not possibly make a prima facie case of wage discrimination based on sex because it is undisputed that Glinski, a male salesperson, was paid the same amount as Mack. We agree with LIRC that this evidence did not preclude Mack from making a prima facie case. As LIRC observed:

> It is undisputed that, during the period from January 2005 until the end of Mack's employment, Mack, a female, was being paid significantly less than Dodge, a male. The pay given to Glinski does not change that fact. If the different pay given to Mack and Dodge was for their performance of "equal work on jobs the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions," then the requirements of an Equal Pay act prima facie case are made out.

Moreover, Rice Lake Harley failed to offer any specific evidence at the administrative hearing about the duties Glinski performed. Thus, it is impossible to determine whether Glinski and Mack performed equal work.

¶ 53. For the reasons discussed above, we conclude credible and substantial evidence supports LIRC's finding that Mack and Dodge performed equal work requiring equal skill, effort, and responsibility. The other two requirements for a prima facie showing of wage discrimination are undisputed. We therefore agree with LIRC that Mack made a prima facie showing of wage discrimination on the basis of sex.

### ii. Factors other than sex

¶ 54. As discussed above, an employer may defeat a complainant's prima facie showing of wage discrimination by establishing one of four defenses. *Howard*, 234 F.3d at 1004–05. Here, Rice Lake Harley argues the disparity between Dodge's and Mack's salaries was justified by factors other than sex. *See id.* Whether a pay disparity is justified by a factor other than sex is a question of fact. *Hein*, 718 F.2d at 913. Again, we uphold LIRC's factual findings if they are supported by credible and substantial evidence. *See Xcel Energy Servs.*, 349 Wis. 2d 234, ¶ 25.

¶ 55. Rice Lake Harley first argues its decision to pay Mack less than Dodge was justified by Dodge's superior experience with motorcycles and the local Harley community. However, Rice Lake Harley has not presented any evidence that Dodge's additional experience was necessary to perform the job of motorcycle salesperson. Thus, on the evidence before it, LIRC could reasonably conclude Dodge's additional experience did not justify his higher salary.

¶ 56. Second, Rice Lake Harley argues Dodge's higher pay was "directly related to his compensation at his previous employer," Rice Lake Weighing Systems.

(Emphasis omitted.) Rice Lake Harley asserts it "could not logically ask Dodge to leave his previous employer . . . for less than his salary at the time." We agree with Rice Lake Harley that these considerations are relevant to why Dodge *initially* received a higher salary than Mack when he was hired as a sales manager in February 2004. However, they do not explain why Rice Lake Harley chose not to reduce Dodge's salary when he was demoted to a salesperson in January 2005. LIRC's finding of discrimination was limited to the period from January 2005 until Mack's termination. Consequently, whether a factor other than sex justified Rice Lake Harley's initial decision to pay Dodge more than Mack is irrelevant.

¶ 57. During the administrative proceedings, Rice Lake Harley attempted to explain why it did not reduce Dodge's salary when he was demoted in January 2005. However, LIRC found that Rice Lake Harley's explanations were inconsistent, and therefore not credible. For instance, Brekken initially testified he paid no attention to Dodge's salary after Dodge was hired, but he later stated it was "very important" to "maintain [Dodge's] salary at a point where he would continue to be employed by Rice Lake Harley[.]" Elsewhere, Rice Lake Harley stated it "felt [it] owed it to [Dodge] to maintain his salary . . . when his management responsibilities were eliminated" because Dodge had "left a well-paying management position to become sales manager[.]" In its amended answer to Mack's complaint, Rice Lake Harley asserted Dodge's higher salary was based on his superior knowledge, experience, and reputation. We defer to LIRC's determination that Rice Lake Harley's inconsistent explanations for failing to reduce Dodge's pay were not credible. *See Bucyrus-Erie Co.*, 90 Wis. 2d at 418.

¶ 58. Admittedly, an employer's policy of maintaining an employee's compensation upon reassignment to a lower-paying position may constitute a factor other than sex justifying disparate salaries. *See Covington v. Southern Ill. Univ.*, 816 F.2d 317, 322 (7th Cir. 1987); *but see Glenn v. General Motors Corp.*, 841 F.2d 1567, 1570–71 (11th Cir. 1988) (rejecting *Covington*'s reasoning and concluding prior salary alone cannot justify a pay disparity). However, there is no evidence Rice Lake Harley acted in accordance with such a policy in this case. Consequently, credible and substantial evidence supports LIRC's finding that Dodge's prior salary was not a factor other than sex justifying the pay disparity between Dodge and Mack.

¶ 59. Finally, Rice Lake Harley argues the disparity between Dodge's and Mack's salaries must have been based on a factor other than sex because Glinski, a male salesperson, received the same salary as Mack. Again, the fact that Glinski received the same salary as Mack does not explain why Rice Lake Harley decided to pay Dodge a substantially higher salary than Mack for equal work. Further, as noted above, Rice Lake Harley failed to present any evidence to establish that Glinski and Mack performed equal work. Accordingly, Glinski's compensation did not require LIRC to find that the pay disparity between Dodge and Mack was based on a factor other than sex.

*C. Attorney fees*

¶ 60. Rice Lake Harley next argues LIRC and the circuit court erred by awarding Mack attorney fees. Rice Lake Harley concedes a prevailing complainant is entitled to reasonable attorney fees under the WFEA. *See Watkins v. LIRC*, 117 Wis. 2d 753, 765, 345 N.W.2d

482 (1984). However, Rice Lake Harley argues Mack did not prevail on her wage discrimination claim because she only recovered a portion of the damages she sought.

¶ 61. Whether a party qualifies as a prevailing party for attorney fee purposes is a question of law that we review independently.[8] *See Sands v. Menard, Inc.*, 2013 WI App 47, ¶ 53, 347 Wis. 2d 446, 831 N.W.2d 805. A plaintiff is a prevailing party if he or she "succeed[s] on any significant issue in litigation which achieves some of the benefit [he or she] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)). Mack qualifies as a prevailing party under this definition. She prevailed on her wage discrimination claim—the only claim before the ALJ, LIRC, and the circuit court—and she was awarded back pay as a remedy. Mack therefore succeeded on a significant issue in the litigation and achieved some of the benefit she sought in bringing suit.[9]

¶ 62. Alternatively, Rice Lake Harley argues the attorney fees Mack was awarded were unreasonable. "The amount of attorney fees which are reasonable and therefore should be awarded to a successful . . . claimant is a discretionary determination." *Duello v. Board of*

---

[8] The parties dispute the level of deference we should apply to LIRC's conclusion that Mack was a prevailing party. We need not resolve this dispute because, even applying no deference, we conclude Mack was a prevailing party.

[9] Rice Lake Harley cites an unpublished, per curiam opinion released by this court in 2000 in support of its argument that Mack was not a prevailing party. This citation violated Wis. Stat. Rule 809.23(3). We caution counsel that future rule violations will not be tolerated and are likely to result in monetary sanctions. *See* Wis. Stat. Rule 809.83(2).

*Regents*, 220 Wis. 2d 554, 561, 583 N.W.2d 863 (Ct. App. 1998). The first step in calculating an attorney fee award is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. This "lodestar" figure may then be adjusted upward or downward, based on various factors. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). One relevant factor is the "results obtained." *Hensley*, 461 U.S. at 434.

¶ 63. Rice Lake Harley argues Mack's attorney fee award should be reduced to reflect the "results obtained" on her wage discrimination claim. Rice Lake Harley asserts Mack originally requested back pay in the amount of $91,974—the difference between Dodge's and Mack's compensation during the entire period they were both employed by Rice Lake Harley. Mack ultimately received only $8,834.30—the difference between her salary and the average of Dodge's and Glinski's salaries from March 23, 2007, until February 9, 2009. Because Mack received less than ten percent of the back pay she requested, Rice Lake Harley argues she was entitled to only ten percent of the attorney fees she requested.

¶ 64. Rice Lake Harley relies heavily on *Hensley*. There, the United States Supreme Court stated it is "particularly crucial" to consider the results obtained when evaluating attorney fees in a case where "a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434. Here, Mack succeeded on the only claim presented to the ALJ, LIRC, and the circuit court. She simply received fewer damages on that claim than she requested.

¶ 65. Moreover, under *Hensley*, the operative question is whether a plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" *Id.* We conclude Mack's level of success meets this standard. The *Hensley* Court did not mandate the type of strict proportionality analysis proposed by Rice Lake Harley. In fact, the Court stated it agreed with "the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.' " *Id.* at 435 n.11. The Court reasoned such a ratio provides "little aid in determining what is a reasonable fee in light of all the relevant factors." *Id.* Further, and directly relevant to this case, the Court stated it is not necessarily significant "that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* Thus, *Hensley* actually cuts against Rice Lake Harley's argument that Mack's attorney fees should have been reduced to reflect the percentage of requested damages she actually recovered.

¶ 66. Finally, we observe that the level of Mack's success in this case cannot be measured solely by her back pay award. "[A] successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion). "[T]he damages a plaintiff recovers contribute[] significantly to the deterrence of civil rights violations in the future." *Id.* at 575. In particular, our supreme court has held that an indi-

vidual "who files a complaint under the [WFEA] is acting as a 'private attorney general' to enforce the rights of the public and to implement a public policy that the legislature considered to be of major importance." *Watkins*, 117 Wis. 2d at 764. By holding Rice Lake Harley accountable for the wage discrimination it committed, Mack has helped to deter future discrimination by both Rice Lake Harley and other employers. This further justifies the attorney fees awarded to Mack. Accordingly, LIRC and the circuit court properly exercised their discretion by declining to award Mack only ten percent of her requested attorney fees.

## II. Mack's cross-appeal

 

¶ 67. In her cross-appeal, Mack argues the circuit court erroneously exercised its discretion by awarding her only two-thirds of the attorney fees she requested for work performed in the circuit court proceedings. We agree. Although a circuit court has discretion to determine a reasonable attorney fee award, we must "probe the court's explanation to determine if the court 'employ[ed] a logical rationale based on the appropriate legal principles and facts of record.' " *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶ 22, 275 Wis. 2d 1, 683 N.W.2d 58. Here, the circuit court failed to do so. The court simply noted the ALJ awarded Mack "significantly less" back pay than she originally requested, and "given [this] limited recovery[,]" the ALJ reduced Mack's requested attorney fees by one-third. The court then stated the ALJ's one-third reduction was "fair and reasonable under all the facts and circumstances[,]" and the court would "confirm[] the same application and analysis in granting the respondent's request for addi-

tional or supplementary attorney fees incurred on appeal to the [c]ircuit [c]ourt."

¶ 68. The ALJ's prior reduction in Mack's attorney fees was not a valid basis to reduce the attorney fees Mack incurred in the circuit court proceedings. As discussed above, a court may adjust an attorney fee award upward or downward based on various factors, including the results obtained. *Hensley*, 461 U.S. at 434 & n.9. The ALJ determined a one-third reduction in Mack's attorney fees for the administrative proceedings was appropriate because Mack failed to recover the full amount of back pay she requested—in other words, because she achieved only partial success. Conversely, Mack achieved full success in the circuit court proceedings, where she prevailed on every issue raised. Thus, the single factor that justified the ALJ's one-third reduction in attorney fees was not present in the circuit court proceedings. Moreover, the circuit court failed to consider that Mack, acting as a private attorney general, successfully enforced a public right to be free from discriminatory employment practices. *See Watkins*, 117 Wis. 2d at 764. The circuit court therefore erroneously exercised its discretion by reducing Mack's attorney fees based solely on the ALJ's prior reduction.

¶ 69. The circuit court did not find, and Rice Lake Harley does not argue, that Mack's attorney expended an unreasonable number of hours in the circuit court proceedings or that his hourly rate was unreasonable. *See Hensley*, 461 U.S. at 433 (first step in calculating attorney fee award is to multiply number of hours reasonably expended by a reasonable hourly rate). In addition, aside from the rationale rejected in the previous paragraph, neither the circuit court nor Rice Lake Harley has asserted that any factor warrants a reduction in Mack's attorney fees. We therefore reverse the

circuit court's order to the extent it awarded Mack only two-thirds of the attorney fees she requested for the circuit court proceedings, and we remand with directions that the court award Mack the full amount of attorney fees she requested. On remand, the court shall also apply the lodestar method to determine the amount of attorney fees Mack is entitled to recover for this appeal, keeping in mind that Mack has fully prevailed on each issue raised.

¶ 70. Only Mack and LIRC may recover their WIS. STAT. RULE 809.25(1) appellate costs.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.