# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2019AP1671

† Petition for Review filed

Complete Title of Case:

CREE, INC.,

PETITIONER-RESPONDENT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION,

RESPONDENT-CO-APPELLANT,

DERRICK PALMER,

RESPONDENT-APPELLANT.†

| | |
|---|---|
| Opinion Filed: | December 9, 2020 |
| Submitted on Briefs: | July 16, 2020 |
| Oral Argument: | October 1, 2020 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Gundrum, J. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Alan C. Olson* and *Nicolas M. McLeod* of *Alan C. Olson & Associates, S.C.*, New Berlin.  There was oral argument by *Alan C. Olson.* |

Co-Appellant
ATTORNEYS:     On behalf of the respondent-co-appellant, the cause was submitted on the briefs of *Anthony D. Russomanno*, assistant attorney general, and *Joshua L. Kaul*, attorney general.  There was oral argument by *Stephen C. Kilpatrick*.

Respondent
ATTORNEYS:     On behalf of the petitioner-respondent, the cause was submitted on the brief of *Laura A. Lindner* and *Casey M. Kaiser* of *Littler Mendelson, P.C.*, Milwaukee.  There was oral argument by *Robert H. Duffy* and *Casey M. Kaiser*.

COURT OF APPEALS
DECISION
DATED AND FILED

December 9, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1671**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV703**

**IN COURT OF APPEALS**

---

**CREE, INC.,**

　　**PETITIONER-RESPONDENT,**

　**V.**

**LABOR AND INDUSTRY REVIEW COMMISSION,**

　　**RESPONDENT-CO-APPELLANT,**

**DERRICK PALMER,**

　　**RESPONDENT-APPELLANT.**

---

　　　　APPEAL from an order of the circuit court for Racine County: MICHAEL J. PIONTEK, Judge. *Reversed*.

　　　　Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶1    GUNDRUM, J.   Derrick Palmer and the Labor and Industry Review Commission (LIRC) appeal the circuit court's reversal of LIRC's decision finding Cree, Inc. unlawfully discriminated against Palmer when it rescinded a job offer for a Lighting Schematic Layout Applications Specialist (Applications Specialist) position upon learning of his conviction record.  We agree with Palmer and LIRC that based upon the particular facts of this case, Cree failed to meet its burden to show that the circumstances of Palmer's criminal offenses substantially relate to the circumstances of the Applications Specialist position, a burden Cree would have had to meet in order to excuse its otherwise unlawful employment discrimination as to Palmer.  As a result, we reverse the circuit court's decision.

## *Background*

¶2    Palmer filed a discrimination complaint with the Wisconsin Department of Workforce Development alleging that Cree unlawfully discriminated against him when it rescinded a job offer for an Applications Specialist position based upon his conviction record.   An Equal Rights Officer issued an Initial Determination concluding there was probable cause to believe Cree "may have violated the Wisconsin Fair Employment Law" by "refusing to hire or employ [Palmer] because of [his] conviction record."  Following an evidentiary hearing, an Administrative Law Judge (ALJ) determined that Cree had not unlawfully discriminated against Palmer.  Palmer appealed, and LIRC determined otherwise, reversing the ALJ.

¶3    LIRC found that Cree manufactures and sells lighting products.  The job posting for the Applications Specialist position at Cree's Racine facility described the position in the following manner:

> [P]erforms a mixture of design, presales and post sales customer support responsibilities. In this role you will design and recommend the installation of appropriate lighting equipment and systems, create lighting site plans and 3D models, use local building code requirements to perform energy calculations, and also interact directly with customers. You will be part of a team, while applying project management skills to drive your own projects to completion.

LIRC found that if hired for this position, Palmer would have been working at an over 600,000 square foot facility with more than 1100 employees, including about 500 women, which facility "includes a manufacturing space, storage areas with racks of parts, plus offices, conference rooms, 'cubicle farms,' breakrooms, and the like." Palmer would have been primarily assigned to work "in the 'cubicle farm' area, but would have access to the rest of the facility." While the facility has security cameras, they are primarily located "in areas where people tend to get injured on the job and at the entries and exits to the facility"; "office areas and conference rooms tend not to be covered by cameras."

¶4 LIRC also found that

> [p]art of the [Applications Specialist] job is to help customers determine where lighting products should go. The position interacts with engineering teams to understand the technical aspects of products, and interacts with clients to create drawings and deliver them to the clients. There is regular customer interaction, typically by telephone or email, although local clients might travel to the facility because the respondent has demonstration rooms. The job also entails occasional travel to a client location in order to do design work. In addition, the job includes some trade show travel, which involves car rental, staying at a hotel, and interacting with clients on the trade show floor. There is no supervision when traveling.

¶5 Cree offered Palmer the Applications Specialist position contingent on a drug screen and background check, but subsequently rescinded the offer because it learned of his 2012 convictions for strangulation/suffocation, fourth-

degree sexual assault, battery, and criminal damage to property related to a domestic incident with a live-in girlfriend.[1] In addition to these convictions, LIRC found that Palmer also had a 2001 battery conviction related to a "domestic incident" with a girlfriend; however, Cree was not aware of that at the time it rescinded the offer to Palmer.[2]

¶6 LIRC found that Cree rescinded Palmer's job offer based solely on his conviction record. It further concluded that Cree had failed to meet its burden under WIS. STAT. § 111.335(1)(c)1. (2015-16)[3] of demonstrating that Palmer had "been convicted of any felony, misdemeanor or other offense the circumstances of which substantially relate to the circumstances" of the Applications Specialist job. LIRC expressed that

> [t]he fact that there are female employees in the plant with whom the complainant could potentially become involved in a personal relationship that might end badly is a scenario requiring a high degree of speculation and conjecture, and one that goes well beyond any reasonable concern about job-related conduct. Moreover, the ability to meet females and form personal relationships with them is not a circumstance unique to the job at issue, but describes virtually any employment situation in which female workers might be

---

[1] Associate general counsel for Cree, Melissa Garrett, testified that she made the decision to rescind the employment offer to Palmer and did so because of the results of a criminal background check, which showed the 2012 convictions. Garrett was also informed that the charges related to a domestic incident with a live-in girlfriend.

[2] Because all of the parties appear to agree that the substantial-relationship test of WIS. STAT. § 111.335(3)(a)1. (2017-18) allows for consideration of Palmer's pre-2012 criminal record even if such record was not known to Cree at the time it made the challenged employment decision, we proceed under this assumption, although we do not decide the issue.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[3] WISCONSIN STAT. § 111.335(1)(c)1. (2015-16) was subsequently renumbered to WIS. STAT. § 111.335(3)(a)1. while this case was being litigated. This decision will generally refer to the current statutory number found in the 2017-18 version of the statutes.

present. The commission does not believe that the mere presence of females in the work place can form the basis for finding a substantial relationship, absent any reason to believe that the complainant would have the type of contact with female employees that might raise a red flag for an employer considering whether to hire an individual with a record of having committed fourth degree sexual assault.

LIRC further found that Cree had

presented no evidence indicating that the complainant would be supervising or mentoring female employees, nor is there anything to suggest that he would be working closely with female employees. While the record indicates that the job would entail occasional trade show travel, the evidence does not establish that the complainant would be traveling with females on business trips, and there is no basis to conclude that he would be sharing cars, staying at the same hotels, or socializing with females in the course of his business travel. It cannot be found based on this record that the complainant would have had significant personal interactions with female employees in the context of his job.

¶7      LIRC found there was no basis in the record to conclude that Palmer would be "performing his services in private homes or other isolated settings" or otherwise "meeting one-on-one with clients in private settings." It noted that the evidence from the hearing indicated that "the people [Palmer] would interact with would be builders or construction companies," "most of [Palmer's] customer interactions would be by telephone or email, and while [he] might occasionally meet personally with customers, these meetings would take place either at trade shows or at the customer's … showroom or other industrial setting." "[T]here is nothing in the record," LIRC continued, "regarding the types of interactions with co-workers or with the public that might raise a concern that [Palmer] would act in a violent

manner."[4] Cree "did not contend that [Palmer] would be required to deal with angry or irate customers or that there were any conflicts presented in his relationships with the public."

¶8     LIRC determined that

> [f]inding a substantial relationship in this case [between the circumstances of Palmer's offenses and the circumstances of the Applications Specialist job] would require a conclusion that unsupervised contact with other people is in and of itself a circumstance that might lead [Palmer] to engage in violent conduct. However, the commission has consistently declined to conclude that the mere presence of other human beings is a circumstance that creates a substantial relationship.

---

[4] In its appellate brief, Cree relies heavily upon the testimony of Lee Motley, a senior recruiting specialist for Cree, and Garrett that the work environment at Cree was "stressful." Both the ALJ and LIRC, however, found their testimony on this point to not be credible. While a different credibility finding on this point may have made a difference in our consideration of this case, we are bound by LIRC's credibility findings, *see Xcel Energy Servs. v. LIRC*, 2013 WI 64, ¶48, 349 Wis. 2d 234, 833 N.W.2d 665, and thus are not at liberty to consider the testimony related to stressful aspects of the work environment at Cree.

Cree also relies heavily upon the testimony and opinion of Cree witness Dr. Darald Hanusa. Cree uses Hanusa's testimony to connect domestic violence and workplace violence. LIRC, however, gave Hanusa's testimony no weight, specifically finding it "unhelpful," because "[a]mong other problems, … Hanusa stated that someone who had successfully completed a domestic violence pro[gram] would not pose a significant risk of workplace violence, but did not take into consideration the fact that [Palmer] successfully completed anger management classes as well as training on 'criminal thinking,' which focused on dealing with conflict, high risk situations, and effective communication, including in the context of work relationships." As with credibility determinations, we are restrained by LIRC's determinations as to the weight to be given to evidence, *see Milwaukee Symphony Orchestra, Inc. v. DOR*, 2010 WI 33, ¶31, 324 Wis. 2d 68, 781 N.W.2d 674 ("[T]he weight and credibility of the evidence are for the agency, not the reviewing court, to determine." (alteration in original; citation omitted)), and thus are not at liberty to give any weight to Hanusa's testimony.

LIRC concluded that Cree had unlawfully discriminated against Palmer. Cree appealed the decision to the circuit court, and the court reversed. Palmer and LIRC now appeal.[5]

### *Discussion*

¶9 Wisconsin law prohibits an employer from refusing to hire a prospective employee on the basis of his or her conviction record. WIS. STAT. §§ 111.321, 111.322. The employer may, however, so discriminate if "the circumstances of [any felony, misdemeanor, or other offense] substantially relate to the circumstances of the particular job" for which the employee is being considered. WIS. STAT. § 111.335(3)(a)1. In this case, it is undisputed that Cree rescinded its offer to hire Palmer for the Applications Specialist job solely due to his 2012 convictions. Thus, the issue before us is whether Cree's decision was nonetheless lawful on the basis that the circumstances of Palmer's convictions substantially relate to the circumstances of the Applications Specialist position.

¶10 In an employment discrimination case, such as this one, we review LIRC's decision, not that of the circuit court. *See Rice Lake Harley Davidson v. LIRC*, 2014 WI App 104, ¶21, 357 Wis. 2d 621, 855 N.W.2d 882. As to LIRC's findings of fact, they "are conclusive on appeal as long as they are supported by credible and substantial evidence." *Id.*, ¶46. In the case now before us, Cree develops no challenge to LIRC's factual findings.

¶11 Determining whether the circumstances of Palmer's prior convictions substantially relate to the circumstances of the Applications Specialist job requires us to apply the statutory language of WIS. STAT. § 111.335(3)(a) to the facts of this

---

[5] We held oral argument on October 1, 2020.

case. This is a matter of law we review de novo. ***Wisconsin Bell, Inc. v. LIRC***, 2018 WI 76, ¶29, 382 Wis. 2d 624, 914 N.W.2d 1. When we review only matters of law, we give no deference to the legal decisions of the agency. *See **Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21.

¶12 The purpose of the substantial-relationship test is to "[a]ssess[] whether the tendencies and inclinations to behave a certain way in a particular context are likely to reappear later in a related context, based on the traits revealed." ***County of Milwaukee v. LIRC***, 139 Wis. 2d 805, 824, 407 N.W.2d 908 (1987). "It is the circumstances which foster criminal activity that are important …." ***Id.*** "[F]actual inquiry" may be made for the purpose of "ascertaining relevant, general, character-related circumstances of the offense or job." ***Id.*** at 825. The employer bears the burden of demonstrating that the circumstances of the offense(s) substantially relate to the circumstances of the particular job. *See **id.*** at 820; ***Gibson v. Transportation Comm'n***, 106 Wis. 2d 22, 29, 315 N.W.2d 346 (1982) ("[T]he Department … satisfie[d] *its burden* of establishing that the circumstances of the felony for which petitioner was convicted substantially relate to the license for which he applied." (emphasis added)).

¶13 Cree asserts that its Racine facility where Palmer would have worked is very large, having "many unobserved 'nooks and crannies,'" locations that are very loud, and approximately 1100 employees about 500 of whom are women, and the employees have access to almost all areas of the facility, creating significant opportunity with which Palmer could "commit additional crimes against persons

and property." Cree also states that Palmer "would have … regularly interact[ed] with female coworkers whom he could later harm outside of work."[6]

¶14 Palmer's criminal record does demonstrate a "tendenc[y] and inclination[] to behave a certain way in a particular context"— to be physically abusive toward women in a live-in boyfriend/girlfriend relationship. *See County of Milwaukee*, 139 Wis. 2d at 824. In light of Palmer's criminal history, if the question before us was whether Palmer is likely to again be violent toward another woman with whom he is in a live-in boyfriend/girlfriend relationship, the answer would almost certainly be "yes." But that is not the question before us. The question is whether Cree met its burden to show that Palmer's past domestic abuse is substantially related to the circumstances of the Applications Specialist job Palmer applied for. Based upon LIRC's findings, to which we are limited, we cannot conclude that it has.

¶15 Cree presented no evidence suggesting Palmer has ever been violent in a circumstance other than a live-in boyfriend/girlfriend relationship or even suggesting he has ever had such a relationship that in any way stemmed from or was related to his employment. And as LIRC found, Cree presented no evidence suggesting Palmer would be supervising, mentoring or even working closely with female employees. We agree with LIRC that it would require "a high degree of speculation and conjecture" to conclude that Palmer would develop a live-in boyfriend/girlfriend relationship through the Applications Specialist job and also

---

[6] Cree further writes: "The fact that he would have been engaging in unsupervised travel with male and female coworkers and meeting alone with customers, both male and female, in various potentially isolated locations also raises significant concerns." Because much of this assertion is in conflict with facts as found by LIRC, and because Cree presented little evidence regarding opportunities for wrongdoing during "unsupervised travel" and fails to develop an argument related to such opportunities, we do not address this point. *See ABKA Ltd. P'ship v. Board of Rev.*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (we do not address undeveloped arguments).

agree that the mere contact with others at the facility and on the job is not substantially related to Palmer's domestic violence. Cree's position appears to be less focused on the circumstances of the particular job Palmer applied for and more focused on the general sense that Palmer is not fit to be unconfined from prison and participating in the community at all due to his prior crimes, even though he has long since finished serving the confinement portion of his sentence.

¶16 In enacting this scheme protecting against conviction-based discrimination, the legislature chose not to exempt from its application certain particularly disturbing offenses. The legislature could have exempted convictions for attempted first-degree intentional homicide, first-degree sexual assault, or other offenses, such as the strangulation/suffocation, fourth-degree sexual assault, battery, and criminal damage to property offenses of which Palmer was convicted. It could have easily done that, but chose not to. Thus, courts are left with the task of trying to faithfully apply the law as the legislature enacted it, which is with general language allowing for conviction-based employment discrimination only where the circumstances of a conviction are "substantially relate[d]" (not "somewhat related") to the circumstances of the particular job. Based upon the facts presented, as LIRC found them, we must agree with LIRC and Palmer that Cree failed to establish a substantial relationship between the circumstances of Palmer's prior convictions and the circumstances of the Applications Specialist job.

*By the Court.*—Order reversed.